## Emeline S. Morton, Administratrix, &c., v. David Preston.

*Estate of deceased persons: Right of administrator to recover property disposed of by heir.* M. died in Michigan, owning shares in a New York corporation. No administrators being appointed, the widow and heirs placed their names on the certificate representing the stock under an agreement that it should be sent through W. D. M., one of the heirs, to a named person in New York for sale; and it was sent accordingly.

W. D. M., having thus received the certificate, and having sent it to New York in pursuance of the arrangement, subsequently, and without the knowledge or assent of the widow and other heirs, made an agreement to pledge it as security for a debt owing by him, and thereupon required the bailee of the certificate

MORTON *v.* PRESTON.

to deliver it to the creditor, which was done. The latter afterwards sold it and received the price. These facts coming to the knowledge of the widow, she took out letters upon the estate, and sued the creditor for the conversion of the property. *Held,* that she was entitled to recover.

*Estoppel of administrator by acts previous to the appointment.* The administratrix in such a case is not estopped by her previous action in endorsing the certificate from maintaining the suit in her representative capacity.

*Trover: Damages for the conversion of certificate of stock.* When a party wrongfully sells a certificate of shares of stock in a corporation, under such circumstances as to make him liable in trover, it is the shares of stock that he is to be considered as having converted, and not merely the paper certificate which represents those shares. He cannot claim, therefore, to be liable only for nominal damages for such conversion.

*Heard October 23d, 1868. Decided January 11th.*

Error to Wayne Circuit.

This was an action of Trover brought to recover damages for the conversion of certain shares of stock.

Judgment was rendered in favor of the defendant below. The facts are stated in the opinion.

*D. J. Davidson,* and *A. Pond,* for plaintiff in error.

1. Although the property represented by the certificate in question be considered as being situated in the State of New York where the corporation exists, yet the plaintiff may maintain this action.

*a.* Upon grant of letters, the administrator is clothed with the legal title to all the personal property of the intestate, including choses in action.—*Beecher v. Buckingham, 18 Conn. 110 ; Perkins v. Stone, 18 Id. 276.*

*b.* This title takes effect by relation at the time of the death of the intestate, and the administrator may maintain an action for a wrongful intermeddling with the estate occurring prior to grant of letters. — *Fisher v. Young, Bulst. 268 ; 9 Wend. 302 ; 2 Hill, 181.*

*c.* This legal title extends to the personal property and choses in action of the intestate situated without the State. *Shultz v. Pulver, 11 Wend. 363 ; Perkins v. Stone, 18 Conn. 270 ; Rand v. Hubbard, 4 Metc. 252 ; Hutchings v. State*

*Bank, 12 Id. 422; Swarez v. Mayor, etc. of New York, 2 Sandf. Ch. 173; Brown v. Brown, 1 Barb. Ch. 189; Peterson v. Chemical Bank, 32 N. Y. 21; Evens v. Tatem, 9 Serg. and Rawle 258; Swearingen's Exr. v. Pendleton, 4 Id. 392; McNamara v. Dwyer, 7 Paige, 239; Guilick v. Guilick, 33 Barb. 92.*

The executor or administrator represents the person of the intestate, and so far as the title of personal property is concerned, stands in his stead, being his "assignee in law." *Shultz v. Pulver, 11 Wend. 363.*

*d.* The rule prohibiting foreign executors or administrators to prosecute or defend in their representative character, without the previous ceremony or qualification of probate and letters, rests upon a mere personal disability. Courts simply withhold their aid in enforcing the title of such foreign administrators, by reason of their solicitude to protect the rights of creditors and legatees resident in the jurisdiction in which the assets are found. — *Doolittle v. Lewis, 7 Johns. Ch. 51; Holmes v. Remsen, 4 Id. 472; Thorne v. Watkins, 2 Ves. Sen. 35.*

2. The defendant, by the transfer to him under the circumstances shown by the record, obtained, as against the plaintiff, no title, legal or equitable, to the certificate of stock in controversy.

*a.* The certificate was not so indorsed as to pass the legal title by delivery.

*b.* It did not come to the hands of the defendant with this indorsement upon it, under such circumstances as to estop any of the heirs of Julius D. Morton to whom the certificate was issued, from denying that the title, legal or equitable, passed to him.

The certificate was indorsed, as shown, and delivered to Wm. D. Morton, not to sell or transfer to the defendant or to any one else, but for the sole purpose of transmitting to Buffalo. He had so transmitted it, and thus the express

authority conferred upon him by the other heirs was at an end.

Hence, the defendant can claim nothing against the other heirs, upon the ground of any authority expressly given to Wm. D. Morton.

And as the indorsement carried with it no evidence of title, he can claim nothing upon that ground.

c. The plaintiff, in her character as administratrix, is not estopped from denying that the title, legal or equitable, passed to the defendant.

All she did was to endorse with her own name the certificate of stock, for the purpose of enabling it to be transferred upon certain contingencies, which never happened, to some one, other than the defendant, and the defendant obtained possession of it with this endorsement upon it, without her knowledge or consent, and without any intention on her part to transfer the title to him. — *Wilson's Admx. v. Hudson, 4 Harrington 168 ; Doe dem. Hornby v. Glenn, 1 Adol. and Ellis, 49.*

3. The defendant having converted the certificate, which represents the title to the property in question, to wit, the stock, is liable as for a conversion of the stock.

Any interference with or control exercised over property under a claim of right, inconsistent with the rights of the owner, is a conversion.

The defendant claims the right to retain, and did retain the certificate, which was the only evidence of title to the stock, upon the ground that he was entitled to it as the owner of the stock ; and in disposing of the certificate, claimed and assumed to dispose of the stock, and has thus assumed an interference with the property inconsistent with the rights of the complainant, and is guilty of a conversion of it.

It is well settled that Trover will lie for the conversion of a chose in action, such as a promissory note, bond, title deed, and certificate of stock ; and the measure of damages is the value of the property represented by such chose in

action.—*Bradley v. Gamelle*, 7 *Minn.* 331; *O'Donoghue v. Corby*, 22 *Mis.* (1 *Jones*), 394; *Webber v. Davis*, 44 *Maine*, 147; *Gibbs v. Chase*, 10 *Mass.* 128; *Miller v. Baker*, 1 *Met. R.* 81; *Common v. Hillier*, 11 *S. C. L. R.* (*Rich.*) 193; *Anderson v. Nichols*, 28 *N. Y.* 600; *Clowes v. Hawley*, 12 *Johns.* 484; *Parry v. France*, 2 *Bos. and Pull.* 451; *Robbins v. Packard*, 31 *Vt.* 570; *Stone v. Clough*, 41 *N. H.* 290; *Murray v. Burling*, 10 *Johns.* 170; *Bowling v. Nash*, 10 *Cush.* 418; *McCombie v. Davis*, 9 *East*, 538.

*Walker & Kent*, for defendant in error.

1.  It is now settled that the title to stock, as between the parties, may be transferred by a transfer of the certificate endorsed in blank.—*Com. Blc. v. Kortwright*, 22 *Wend.* 348; *N. Y. & N. H. R. R. Co. v. Schuyler*, 34 *N. Y.* 30; *Mandlebaum v. North Am. Min. Co.* 4 *Mich.* 465.

2.  In this case the plaintiff and other persons entitled to the estate of J. D. Morton, by endorsing the certificate in blank for the purpose of a sale, and by entrusting it to Wm. D. Morton, gave him an apparent authority to pledge the same, and they are as much bound by his act as though they had expressly assented thereto.—*Ex parte Swan*, 7 *Com. Bench* (*N. S.*) 400; *S. C.* 7 *Hurlstone & Nor.* 601; *Davis v. Bradley*, 24 *Vt.* 55; *Booth v. Bruce*, 40 *Barb.* 114; *State B'k v. Hastings*, 15 *Wis.* 75; 16 *La. An.* 127; 15 *Mass.* 389; *Story on Agency*, 127.

3.  The heirs and distributees of an estate, where there are no debts, may settle it and dispose of the personal property without administration; at least they can pass a title which shall be good against themselves.—*Babbitt v. Bowen*, 32 *Vt.* 438; *Taylor v. Phillips*, 30 *Id.* 238; *Kilcrease v. Shelby*, 23 *Miss.* 161; *Reid v. Butt*, 25 *Geo.* 28; 29 *Id.* 585.

The case of *Cullen vs. O'Hara*, 4 *Mich.* 132, will be cited as sustaining a contrary doctrine, but we submit that so far as it does this, it should be overruled.

4. The taking out of letters of administration by plaintiff related back to the transfer of the certificate in question and legalized the same, even though otherwise void.—*Alvord v. Marsh, 12 Allen, 603; Priest v. Watkins, 2 Hill, 225; Giles v. Churchill, 5 N. H. 337; Mayner v. Ryan, 19 Mis. 196; Vroom v. Van Horne, 10 Paige, Ch. 557; Cross v. Teilington, 2 Murphy, 6; Whitehall v. Squire, 1 Salkeld, 296; Vaughan v. Brown, Andrews, 333; Carlin v. Vernon, 5 Durn. & East, 590; 8 Johns. 98, 125; Givens v. Higgins, 4 McCord, 286; 15 Mass. 325.*

5. If the transfer to defendant of the certificate was void, then defendant has converted nothing but the certificate itself, and not the shares it represented, and the damages suffered are only nominal.—*2 Taunt. 439; 7 Serg. & Rawle, 285.*

6. The corporation which issued the stock in question exists only by virtue of the laws of the State of New York, and every transfer thereof is regulated only by the laws of that State.—*Black v. Zacharie, 3 How. 511.*

The plaintiff is administratrix of the estate of J. D. Morton, only in Michigan. Her authority would not be recognized in New York; hence, she has not the legal title to the stock in question.

GRAVES J.

The plaintiff in error brought trover in the Court below against Preston, to recover damages for the alleged conversion by him of a certificate for fifty shares of stock of the Buffalo and Detroit Transportation Company, and which certificate, and the stock represented by it, Mrs. Morton claimed to have belonged to the estate of her late husband.

It appeared in evidence on the trial, that Mr. Morton died intestate in this State, in February, 1865, leaving his widow, the plaintiff, and three children; namely, J. Sterling Morton, William D. Morton, and Emma Morton, all of full age, him surviving. It further appeared that after the death

of Mr. Morton, the certificate in question was found among his papers and taken possession of by his family.    The estate not appearing to be indebted, no step was taken to administer upon it at the time, and the children mutually agreed that Mrs. Morton and her daughter Emma should occupy the homestead and receive and use the income of the estate for their support, so far as necessary, and preserve the property; and that upon the death of Mrs. Morton the estate should be divided among the children.    It having been subsequently thought advisable to convert the stock in question into money in order to invest the proceeds in real estate security, the widow and children, to effectuate that object, in August or September, 1865, placed their names upon the certificate, and caused their indorsements to be attested by two witnesses.    The certificate thus written upon, was placed in the hands of William D. Morton, one of the children, with express instructions to send it to one Armstrong, at Buffalo, to be by him sold and converted into cash. · Young Morton then transmitted the certificate to one Gridley at Buffalo, to be by him handed over to Armstrong if the latter could sell it, but it was not sold.    About the first of November, 1865, the defendant Preston, who was a Banker at Detroit, held a note for $4,200 made by one Wilkins and endorsed for the accommodation of the latter by said William D. Morton, which had matured and was unpaid.    Preston urged young Morton to pay the note, and threatened to institute legal proceedings against him if the matter was not satisfactorily arranged.

Morton was then expecting to be elected cashier of a new bank about to be organized in Detroit, and was apprehensive that a suit against him on the Wilkins' note would impair, if not destroy his chance for an election.    He thereupon offered to take up the Wilkins' note by substituting his own, but Preston declined to arrange the matter on that basis unless Morton would give additional security. Morton then proposed to give the stock as security, but informed Preston that the certificate was issued to the father.

Julius D.; that it had been endorsed by Mrs. Morton, and the heirs, and was then in Buffalo to be sold. Preston acceded to this proposal, and young Morton thereupon gave his own note for the amount of the Wilkins' note and an order on the custodian of the stock at Buffalo for the delivery of the certificate, and Preston surrendered the Wilkins' note to Morton. In this negotiation between William D. Morton and Preston, the former talked about the stock as though it belonged to him; but the latter did not ask him whether he owned it or not.

At this time, young Morton was cashier of the Farmers and Mechanics Bank of Detroit, and the transaction referred to, occurred at the office of Preston in the same city. After acquiring the order from Morton, Preston, by means of it, obtained possession of the certificate.

This disposition of the certificate by William D. Morton was wholly unauthorized by Mrs. Morton, and the brother and sister of William, and was unknown to them until some time in the following spring, when Preston, on being applied to by one of the heirs, and before he had obtained actual possession on the order, refused to give up the stock. On the 29th of December, 1866, the stock was sold by Preston for $4,750, and on the 12th of November, 1867, Mrs. Morton was appointed administratrix of the estate; and thereupon she caused a demand to be made upon Preston for the delivery of the certificate, and at the same time offered to return the Wilkins' note.

The sum for which the stock was sold, together with the interest from the time of sale, amounted to $5,217 18. The defendant Preston, testified, among other things, that when he made the arrangement with young Morton, he had no knowledge that the latter was not acting in good faith in making the transfer, and supposed that he was the owner of the stock. He further testified, that it was customary for bankers to loan money on certificates for stock, endorsed in blank; and that when he received the order for the

stock from Morton, the latter stated that the stock was in Buffalo for sale, and that he could pay him, Preston, when the sale should be made.

He also testified, that on receiving the order, he sent to Buffalo and had the stock held subject to his order.

It likewise appeared in evidence, that the balance due from Preston, after deducting the amount of the notes of William D. Morton, had been tendered, and that it was agreed that such balance should not be considered in the case.

The errors assigned are quite numerous, but we think that some of them are not material to the decision of the case, and that the others do not require to be separately considered.

It may be doubted whether upon the theory of the defense the plaintiff's right to maintain the action could be resisted. The stock belonged to the estate, and no administrator had been appointed. The family wished to sell, but had no design to pledge the stock as security for the debt of any person. The certificate was placed in the hands of W. D. Morton for the sole purpose of being sent to Armstrong, who was to sell it if he could, and who was alone confided in by the family to make the sale. It was not at the time of the arrangement with Preston in the hands of young Morton, but was in Buffalo, where it had been sent according to the design of the family. These facts were not disputed. If, as a matter of fact, Preston was led to believe by or without any representation on the subject on the part of young Morton that the latter was the owner, it is difficult to conceive how any such belief, under the actual circumstances, could avail him as a defense against the claim of the true owner.

It appears that at the very time of the arrangement, Morton had not the evidence of ownership sometimes implied by possession; and it is manifest that the instrument was

not so endorsed for the purpose of transfer as to answer the requirements of the law merchant regulating the mode of transfer of commercial paper. The certificate was issued to Julius D. Morton, but the indorsements consisted only of the names of his widow and children. If it be admitted, therefore, that the certificate had the same negotiable qualities which belong to commercial paper, and required no greater or other formalities to work a change of title, which is the utmost that has been claimed for it, it is evident, I think, that the endorsement in question was not such, as thereupon to make the legal title pass by delivery.

The form and nature of the indorsement were apparently insufficient to work a technical transfer of the legal title, and to see this, was, in legal contemplation, to know it.

It seems to me, therefore, that the circumstance that young Morton never in fact possessed any authority to sell, or pledge the certificate, and neither had possession nor the right to it, and the additional circumstance that the indorsement, as it stood upon the paper, was *prima facie*, insufficent to pass the legal title, completely answer the claim set up by the defense.

Whatever may be thought, however, of this view of the present case, the Court are of opinion that the case of *Cullen v. O'Hara, 4 Mich. 132*, which was decided upon much consideration, and from which we see no reason to depart, is decisive of the most material questions presented by this record.

In that case, O'Hara, as administrator of Ann O'Brien, brought trover against Cullen to recover for the conversion of gold coin amounting to $585.

The substantial facts were that the plaintiff's intestate died in November, 1848, in possession of the coin, and without having made any will; that during her last sickness she stated to her attendant, one Catharine Vaughan, that the principal part of the property in her possession belonged to the estate of her brother, one James O'Brien, who had

died inestate some time before in New York, leaving an
infant child named Ann O'Brien, his next of kin and sole
heir, for whom Cullen was guardian, and that upon the death
of Ann O'Brien, the elder, her attendant, Catherine, de-
livered to Cullen the coin in question. It was also proved
. that in September, 1849, when O'Hara and Cullen were
aware of all the facts and of the claims of each, the former,
in his individual capacity, borrowed of the latter $200 of
the coin in dispute, and gave his bond and mortgage to
secure its repayment, and that the mortgage had been fore-
closed when the trover suit was tried. O'Hara, as adminis-
trator, demanded the coin of Cullen, who refused to deliver
it. It did not appear that any administrator had been ap-
pointed on the estate of James O'Brien.

On the trial, Cullen requested the Court to charge the
jury that the plaintiff, by loaning the $200 from Cullen,
and giving his bond and mortgage therefor, was estopped
from maintaining the action; and that if the jury believed
that any part of the money was in the plaintiff's possession,
at the commencement of the action, the plaintiff was not
entitled in any event to their verdict for such portion.

The Court refused to charge as requested, but stated to
the jury in substance, among other things, that if the mo-
ney belonged to the estate of James O'Brien and was taken
possession of and held by Ann O'Brien in opposition to the
rights of the heir, her right to possession passed to the
plaintiff as her administrator, and that the latter could be
held accountable only to an administrator of James O'Brien,
and not to his heir.

The case having been brought here, it was deliberately
determined by this Court that the loan of $200 of the mo-
ney in controversy having been made by O'Hara in his in-
dividual capacity, did not estop him from asserting his right
to the money as administrator; that the possession of the
$200 obtained by the loan in no manner impaired his right
to maintain trover for it, in his representative character,

against the defendant; and that the loan itself was as much a conversion as if it had been made to a third person.

It was likewise held that, under our law, when one dies intestate, the title to his personal property does not go to the next of kin, but remains in abeyance until administration granted, and then vests in the administrator, as of the time of the death of the intestate, and that the next of kin becomes entitled only after administration, and then simply to the surplus remaining after the debts of the intestate and expenses of administration are paid.

It was also decided that when, in consequence of the death of the owner, another is clothed with the possession of personal property, and assumes control of it, such casual possessor becomes responsible for the property, and may maintain the ordinary legal remedies, trover included, to defend it and for self protection; and further, that the administrator of such possessor may sue in trover for a conversion done after the death of the latter, and before the appointment of the former.

As we are satisfied that the principles, thus asserted, afford a perfect answer to the leading points presented by the defense, and accepted by the Court below, we do not deem it necessary to quote the reasoning stated in the report. If, as decided in O'Hara's case, his intestate could have maintained trover on her possession, and he, as her administrator, was entitled to the same remedy for a conversion after her death, and before his appointment, it must be admitted that the right of Mrs. Morton, as administratrix of the estate owning the certificate and stock, to maintain trover, cannot be doubted.

Upon the argument before us the defendant submitted a point not yet noticed, but which we think may be disposed of in a few words. He maintained that if the transfer by young Morton to Preston was void, it followed that the certificate only, and not the stock represented by it, was converted, and that consequently the damages could only be nominal.

It is quite certain that both parties always before the trial, and thereat and the court below in the charge, treated the certificate as a muniment of title possessing substantial value; and that the facts clearly show that by means of it the defendant in error realized in cash the full value of the stock; and we think it cannot be maintained that it had no other value than such as the paper gave it. It was legally the subject of the form of action adopted in this case, and a judgment against Preston for the conversion would have the effect to confirm the title obtained and passed by him, to the stock.

The judgment of the court below is reversed, with costs, and a new trial ordered.

The other Justices concurred.