## Sarah C. Albright v. William R. Cobb.

*Mortgages: Estates of deceased persons: Personal assets: Heirs.* Under the statute (*Rev. Stat. 1838, Part 2, Title IV., ch. 3, § 10*), unforeclosed mortgages belonging to the estate of deceased persons were made personal assets, and the right there recognized of the mortgagee, his executor or administrator, to take possession of the mortgaged premises, is one that did not descend to the heirs of the mortgagee; and deeds of such heirs could have no effect to transfer the mortgage interest of the deceased, at least without a showing that the estate had been administered and settled, and the debts paid, and that such mortgage upon a final distribution had been conveyed to them.

*Mortgages: Heirs: Administrators.* A mortgage executed subject to the provisions of that statute did not convey to the mortgagee the legal estate, even after forfeiture for non-payment, to the extent of making the mortgagee's interest descendible to heirs, instead of executors and administrators.

*Mortgages: Estates of deceased persons: Administrators.* Under the amendments of said statute, while the right of possession is taken away, the executors and administrators, and not the heirs, have always had the right to enforce payment, or release, or foreclose or convey mortgages of the deceased; and the heirs, as such, have no power over them, or right to dispose of them, or to maintain an action in respect to them.

*Administrators: Official character: Evidence: Officers de facto.* Proof of administration, and who are administrators, does not fall within the rule applicable to the proof of official character in the case of a public officer or the officer of a corporation, which makes proof that they are officers *de facto* sufficient; where the office or trust is rather in the nature of a private one, or where the appointment is the result of the proceedings or determination of a court, the appointment must be strictly proved in the ordinary way.

*Ejectment: Mortgages: Assignment: Administrators: Title: Evidence.* In an action of ejectment, where the defendant bases his right of possession upon a certain mortgage which he claims was assigned to him by administrators of the estate of the mortgagee, parol proof that defendant's assignors acted as administrators of such estate, and were recognized by the probate court in transacting the business of the estate as such, is held inadmissible, and insufficient to establish a title through them.

*Submitted on briefs July 17. Decided October 20.*

Error to Livingston Circuit.

*H. H. Harmon*, for plaintiff in error.

*Dennis Shields*, for defendant in error.

CHRISTIANCY, J.

This was an action of ejectment brought by the plaintiff in error, and tried in the Livingston circuit before the

court without a jury, where judgment was rendered for the defendant, and the plaintiff brings the case here by bill of exceptions and writ of error.

The plaintiff on the trial deduced title from the United States to Olney Hawkins, the first conveyance to him being December 14, 1838. Hawkins conveyed to one Quackenbush, February 5, 1840; Quackenbush and wife conveyed to Hawkins, August 10, 1840; and Hawkins, by quit-claim deed, dated January 25, 1859, conveyed to Roswell Barnes, the original plaintiff in this suit, and of whom the present plaintiff, who has been properly substituted, is the sole heir.

This was the claim of title under which the plaintiff claimed, and without any counter showing it constituted a *prima facie* case on her part.

But the defendant claimed under, and introduced, *first*, a mortgage upon the same premises, executed by Hawkins to one Virgil Booth, dated August 17, 1839, for one thousand one hundred dollars, payable in six months; *second*, an assignment of said mortgage to Joseph Green, purporting to have been executed by Rhoda Booth and Philip Bach, administrators of Booth's estate, dated February 24, 1863, recorded June 9, 1864; *third*, a quit-claim deed from the widow and heirs of said Booth and from E. W. Morgan and wife, to said Green, dated February 25, 1863, recorded June 9, 1864; *fourth*, a quit-claim deed from said Green to defendant, dated March 8, 1864, and recorded June 9, 1864.

The defendant also introduced evidence tending to show that prior to the time that Hawkins executed his quit-claim deed to Barnes, he had executed a quit-claim of the same property to Robert D. Power for the consideration of fifty dollars; that when Barnes requested Hawkins to deed to him, he told Barnes of this prior deed to Power, but that Barnes presented to him what purported to be a written request of Mrs. Power and William M. Power, administrators on Robert D. Power's estate, to execute a deed to

Barnes, which he did, dating it back to the previous trans-action, Barnes representing that he wanted it for the benefit of the Power heirs, and that the original deed to Power was lost; that no consideration was paid for this deed to Barnes; that at the time of the quit-claim to Power, Hawkins told him about the mortgage to Booth, and stated to him that he did not know what was due upon it; but that he had no conversation with Barnes about it.

But the court, in his finding of facts, finds (and this is not questioned in the case), that " on the 8th of January, 1867, Barnes obtained a quit-claim deed from the widow and heirs at law of said (Robert) Power, of their interest in the premises; that no consideration was paid for said deed, and there is no evidence that Barnes paid Hawkins any thing for his quit-claim."

The court further finds (as from the evidence he was well authorized to find) that the mortgage in question " was given by Hawkins to Booth to secure a loan of four hundred ' dollars and the percentage, and the balance of the eleven hundred dollars was added to it on the supposition that it would take two years to foreclose the mortgage;" that " the amount paid by Hawkins on said mortgage did not exceed two hundred and fifty dollars or three hundred dollars. [The evidence of Hawkins tended to show that this was made in two payments, the date of which he could not give, but that one hundred and twenty-five dollars of it was paid about the date of the mortgage.]

The court also finds that Booth died in August, 1859; that " the administrators on Booth's estate, viz.: Rhoda Booth and Philip Bach, assigned said mortgage to Joseph Green on the 24th February, 1863, which assignment was duly recorded on the 9th day of June, 1864." Exception, however, is taken to the evidence on which the court found the fact of administration on this estate, and that these were the administrators; and this is a main question in the case.

The court further finds that " the heirs at law of Booth

executed to said Green a quit-claim deed of said lands on the 25th February, 1863, recorded June 9th, 1864" (exception, however, is taken, and error is assigned, upon the admissibility of the evidence, upon which the finding of this heirship is based). The court also finds "that said Green paid the heirs of Booth six hundred dollars for the mortgage and quit-claim; that on the 11th March, 1864, said Green assigned said mortgage to defendant, which assignment was duly recorded June 9th, 1864; that on the 8th of March, 1864, said Green executed to defendant a quit-claim deed of said lands, recorded June 9th, 1864; that defendant paid Green six hundred dollars for the last mentioned conveyance and the notes which accompanied the Hawkins mortgage; that Green went into possession of said lands soon after he obtained the assignment of the mortgage and the quit-claim deed from the heirs of Booth" [which the evidence shows to have been in 1863], "and cut off twenty or twenty-five acres of bush and timber, and continued in such possession until he assigned and conveyed to defendant, as above mentioned; and that defendant was in possession, clearing, fencing and claiming title to said land when this suit was commenced."

From this statement of the case, it will be readily seen that the defendant claimed to have taken and to hold possession as mortgagee, or rather as assignee of the mortgage, as well as the grantee of the heirs of the mortgagee, and to these questions, accordingly, the counsel have in their briefs directed most of their argument. These are, in fact, made by the counsel the central or main questions in the case, and all the other questions raised are dependent and hinge upon this. But I do not think that the question of the right of the mortgagee, or his assignee, of such a mortgage, to take or hold possession, or any question dependent upon this, is presented, or can properly be decided upon this record.

To enable the defendant to raise this question, or to insist upon the right of a mortgagee to take and hold pos-

session under the circumstances of this case, he must first show that he has purchased, or in some way become the owner of the mortgage, or that the rights of the mortgagee (whatever they were) were transferred to, and became vested in, Green, through whom only he claims to have derived the rights of Booth, the mortgagee. Booth being dead before any transfer of the mortgage was made, the deed or deeds of quit-claim by his heirs, purporting to convey the land to Green, could have no effect to transfer the mortgage interest of the deceased, at least without showing that administration had been had upon the estate, that the estate had been settled, the debts paid, and that this mortgage, upon a final distribution by the decree of the probate court, had been assigned to these heirs (as provided by *chapter 160, Comp. L. of 1871*).

By the statute in force when this mortgage was executed, (*Rev. Statutes 1838, Part 2, Title IV., ch. 3, § 10*), it was provided that "when any mortgagee of real estate, or any assignee of such mortgagee, shall die without having foreclosed the right of redemption, the mortgaged premises, and the debt secured thereby, shall be considered *as personal assets*, in the hands of the executor or administrator, *and shall be administered and accounted for as such*; and if the mortgagee or assignee shall not have obtained possession of the mortgaged premises in his life time, his executor or administrator may take possession thereof, by open and peaceable entry, or by action, in like manner as the deceased might have done if living."

This section, while it recognizes the right of the mortgagee, his executor and administrator, to take possession, just as clearly shows that this right did *not* descend to the heirs of the mortgagee, and that no estate or interest vested in them as such. It is obvious, therefore, that a mortgage executed subject to the provision of this statute, did not convey to the mortgagee the legal estate, even after forfeiture for non-payment, to the extent of making the mortgagee's interest descendible to heirs, instead of execu-

tors and administrators. This *section 10*, above quoted, was re-enacted in the *Revised Statutes of 1846, chapter 71,* § *12,* with the single alteration at the close of the section, omitting the right to take possession, which was rendered necessary by the act of 1843 (*Sess. L., p. 139*), taking away the right of possession, or to maintain ejectment; and with this alteration, the same section above cited from the *Revised Statutes of 1838,* has been continued from that time to the present,—*Comp. L. of 1871, ch. 157,* § *12;* and during all this time the executors and administrators, and not the heirs, have had the right to enforce payment, or release, or foreclose or convey the same. Being personal assets of the estate, the heirs, as such, could have no power over it, or right to dispose of, or maintain an action in respect to it.—*Cullen v. O'Hara, 4 Mich., 132.*

Whatever right, therefore, Green or defendant may have obtained in this mortgage, must have been derived from the instrument of assignment executed by Rhoda Booth and Philip Bach, purporting *to be*, and describing themselves as administrator and administratrix of Booth, the deceased mortgagee.

But there is not, in my view, in this record any legal evidence tending to show that administration had ever been granted on Booth's estate, or that Philip Bach or Rhoda Booth were ever appointed as administrators. The only evidence introduced or offered for this purpose—and this was objected to as incompetent, excepted to, and error is assigned for its admission—was the parol evidence of witnesses that these persons acted as administrators on that estate; and one witness testified that he had assisted them in doing business in the probate court, where they were recognized as such.

Proof of administration granted upon an estate, and who are administrators, does not fall within the rule applicable to the proof of official character in the case of a public officer, or the officer of a corporation, where it is in general sufficient, *prima facie*, so far as affects the rights

of third persons, to show that an individual has acted notoriously as such public officer, when it will be presumed that he has been duly elected or appointed until the contrary appears (and even proof to the contrary will not in many cases avail any thing when the person is shown to have been acting as an officer *de facto*).

But this rule as to public officers is founded in some measure upon the acquiescence of the public, and the natural presumptions arising from it, and in the case of a corporation, the acquiescence of the corporation, as whose officer he publicly professes to act. But when the office or trust is rather in the nature of a private one (*Short v. Lee, 2 Jac. & W., 468*); or when the appointment is the result of the proceedings or determination of a court, such as the assignee of a bankrupt (*Pasmore v. Bontfield, Vol. 1 Cow., Hill and Edwards' notes to Phil. Ev. (5 ed. 1868), p. 593; Starkie's Ev., by Sharswood, pp. 647, 717*), this kind of parol proof is not sufficient, but the appointment must be strictly proved in the ordinary way; and the appointment of administrators here, being the judicial action and determination of a court of record, it should be proved by the letters of administration themselves, or by the record, or a certified copy of the proceedings, or of the appointment, as the action of courts is proved in other cases.—*2 Cow. H. & Ed. notes, above cited, 452 to 454; 1 Green. Ev., § 519; Starkie's Ev., 717, 693, and 694.* We have been cited to no case, and I have found none, in which parol evidence, like that received here, has, if objected to, been received to prove administration, or the appointment of administrators, to establish a title through them; and I am satisfied it was entirely inadmissible, and its admission erroneous. The defendant, therefore, not showing that he had obtained any right in or under the mortgage, did not show himself in a position to raise any question of fraud, or want of consideration, in the quit-claim deeds from Hawkins, or from the heirs of Power, if such fraud or

want of consideration would have been available to him in any event; nor did he show any right of possession.

As all the other questions raised and argued by counsel are dependent upon the questions above decided, and this disposes of the case, the judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.