E. FRANK PARKS, ADMINISTRATOR, ETC., v. MARGARET
CRIPPIN-NORRIS.

*Statute of limitations — Estates of deceased persons — Growing
crops—Conversion—Tenancy in the entirety—Evidence.*

1. The statute of limitations will not begin to run against an
action for the conversion of the personal property of an intestate until an administrator is appointed.

2. Where, in a suit by an administrator to recover from the widow
of the intestate the value of certain crops growing upon a
farm owned by her and her husband in the entirety at the
time of his death, and which she afterwards converted to her
own use, the plaintiff claims to recover upon the theory that
there was an arrangement between the husband and wife by
which the husband was to own the crops, an objection that
title to the crops can only be shown by showing the record
title to the farm is untenable, as, if plaintiff's theory is substantiated by the evidence, he can recover for the whole crop.

Error to Van Buren. (Buck, J.) Submitted on briefs
April 17, 1894. Decided June 16, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The
facts are stated in the opinion.

*Hawes & Luby,* for appellant.

*Mills, Osborn & Cavanaugh,* for plaintiff.

LONG, J. This action was brought by the administrator
of the estate of Thomas Crippin, deceased, to recover the
value of certain personal property, which it is claimed the
defendant,, the widow of the deceased, reduced to her possession and converted to her own use. Mr. Crippin died
August 6, 1886, and the plaintiff was appointed administrator August 1, 1892. The suit was commenced by summons issued September 19, 1892.

It appears that Mr. Crippin and his wife, prior to Crippin's death, lived upon, and owned as tenants by the entirety, a farm of about 130 acres in Van Buren county. Upon the farm, at the time of Crippin's death, was a large quantity of personal property, and immediately after his death the widow took possession of all of said personal property, and appropriated it to herself, claiming it as her own, and thereby keeping it from the estate. She afterwards disposed of it, and appropriated the proceeds. The question litigated was, who was the owner of this personal property before the death of Thomas Crippin? He left surviving him six children, some of whom were minors at the time this suit was commenced, and the widow has since married Mr. Norris. For some time before Mr. Crippin's death, he lived with his daughter Mary, about two miles from the farm. At his death the personal property in controversy was on the farm, and consisted of horses, cows, hogs, sheep, mower, reaper, carriages, plows, cultivators, fanning mill, scales, about 1,400 bushels of corn, 240 of oats, 912 of wheat, 30 to 40 tons of hay, 250 bushels of potatoes, and other property. The wheat had been cut and stacked. The testimony shows that Mr. Crippin always had charge of the farm and worked it, and that this property was always recognized and called his property.

The defendant pleaded the statute of limitations with her plea of the general issue, and, on the trial, objected to any evidence under the pleadings, for the reason that the declaration shows that all the causes of action alleged accrued more than six years before the action here was commenced; the declaration alleging that the conversion took place on August 6, 1886, and counting specially upon promises made to Thomas Crippin in his lifetime to pay to him the sums of money sued for, and further averring that thereafter, and after the death of Crippin, defendant

promised the plaintiff to pay him, as administrator, the said sums of money, but that she has paid no part thereof· The court overruled the objection, and permitted the proofs to be introduced. The defendant introduced testimony tending to show that some portion of this personal property belonged to her, and she also made the claim that portions of the personal property in the way of crops which were on the farm, and uncut and unharvested, passed to her at the time of her husband's death by right of survivorship, as they were a part of the real estate which she and her husband held by the entirety.

At the close of the testimony the defendant requested the court to charge the jury as follows:

"1. Under the undisputed evidence in this case, the plaintiff can recover for not to exceed one-half the value of all personal property that was on the farm at the time of the death of Thomas Crippin, exclusive of what was owned, if any, by Mrs. Norris

"2. The jury are instructed that the plaintiff in this case, under the undisputed evidence in the case, cannot recover for the corn and potatoes, or for any other crops, that were growing upon the farm at the time of the decease of Thomas Crippin.

"3. The jury are instructed that the plaintiff cannot recover for any household furniture, unless you find that the value of the same shall exceed the sum of $250, and then only for such excess, if any, over and above $250.

"4. The jury are instructed that, in making up the amount which you find due the plaintiff, you shall make a reduction or allowance therefrom of $200, this being the amount which the statute gives her as a matter of law.

"5. The jury are instructed that in no case you shall allow the plaintiff for the value of over 30 tons of hay, one set of single harness, and two cultivators, as that is all the plaintiff claims in the declaration in this case.

"6. The undisputed evidence in the case is that all the property taken possession of by defendant, and converted to her own use, was so done more than six years before the commencement of this suit, and therefore, under the statute of limitations, the plaintiff cannot recover in this cause at all."

The first, second, and sixth requests were refused. The third and fourth requests were given. The fifth request was given, with the following modification:

"That is all that plaintiff claims in his declaration that the hay amounted to. He only claims as to the single harness to be one set. He claims in the declaration for only two cultivators. So that, as to the hay, single harness, and cultivators, you should allow not to exceed 30 tons of hay, one set of single harness, and two cultivators."

The court instructed the jury in the general charge, substantially, that if they found from the evidence that, at the time of the death of Mr. Crippin, he was the owner of the personal property, then their verdict should be for the plaintiff; that, under the laws of this State, the children of the deceased husband are entitled to their share of personal property, just as much as the widow is entitled to hers; that, Crippin having died intestate, all of his personal property would go to his administrator; that, if they found from the evidence that the defendant took possession of the personal property after her husband's death, it would make no difference what became of it, as defendant would be liable for the value as the jury might find it at the time of the death of her husband; that, if she took possession of it, and appropriated it to her own use or disposed of it, and kept it from the estate, she would be liable to the administrator for its value. The above charge was given in connection with the modification contained in defendant's fifth request.

The court further directed the jury that whoever goes into possession of the personal property of an intestate at his death, and assumes control, becomes responsible for it to the administrator of the estate of the deceased when appointed; that, when a man dies intestate, his personal property does not, like real estate, descend to his widow or next of kin or heirs at law, but remains in abeyance until an administrator can be appointed, and is then vested in

him as of the time of the death of the intestate; that no title vests in his widow, children, heirs, or next of kin until the administrator has been appointed and the estate has been administered, and then they take the surplus remaining after the payment of the debts of the deceased and the expenses of administration, each in his or her proportion, under the statute of distributions; that until then a widow or the next of kin of the deceased, although having the right to a distributive share, has no right to possession of the whole or any specific portion of the personal property.

The court further directed the jury that if they found that Crippin died possessed of the personal property, that his widow took possession of it and disposed of it, and plaintiff was afterwards duly appointed administrator of the estate and qualified as such, then he was entitled to recover the fair market value of such property taken possession of and disposed of by defendant at the time at which they might find she took possession of it, with interest at 6 per cent. per annum.

The court further directed the jury that it was for them to determine what articles of personal property belonged to Crippin, and what to defendant, according to the understanding and agreement or rights of the parties; that whatever property Crippin had, which was understood by both himself and defendant to be his, he had the title to; that what was understood and agreed between the parties as belonging to the defendant, she had the title to.

Speaking of the property which was raised upon the farm, the court directed the jury that the farm was that which the two parties owned as tenants by the entirety; that each one owned the whole of it,—or, in other words, her ownership in it was as good as his, and his was as good as hers,—so that who owned the crops raised upon the farm would be a matter entirely of understanding and

agreement, either express or tacit, between them, and the jury, as men of affairs, were to determine just what the arrangement, understanding, and agreement between the parties was with regard to that matter; that if there were any presumption about it, the presumption would be that the property would be owned, and whatever was raised upon the farm would be owned, jointly, but that that was a matter which is so often set aside by agreement that it furnishes very little criterion or aid to a jury in coming to a conclusion, so that the jury must look to the circumstances in all their lights and shades,—must consider what the parties did, how they conducted themselves towards the property, and how it was regarded as between them,—and from such circumstances say who owned the property that was raised upon the farm; that as to the crops growing upon the farm at the time of the death of the ·deceased, the jury should, in determining who owned these, determine what the general understanding was with regard to all the crops growing; that if the understanding was that Crippin was the owner, and whatever crops were raised there were to be his without regard to the ownership of the fee to the land, then the crops which were so raised, or some portion at least, would be his; so that, if the jury found that the understanding and agreement between the parties was that Crippin was the owner of whatever was raised upon the farm, then the ownership as to the growing crops would not terminate at his death; that if, however, they found the understanding to be that the parties were to own the crops in common, the plaintiff could recover for only one-half of the growing crops.

Defendant's first claim is that the plaintiff's action is barred by the statute of limitations. That claim cannot be supported by the record. At the death of the intestate, as stated by the court below, the title to the personal property did not vest in the widow or the children. The

widow took it all into possession, and held it, or disposed of it without hindrance from any person. This property was liable to the payment of the debts of the deceased, and there was no person in being in whom the title could vest until the appointment of an administrator.

It was said in *Cullen v. O'Hara*, 4 Mich. 132, 136:

"When a man dies, his possession of property which he owned during his life is, of course, terminated; others come into the possession of it,—ordinarily, his nearest friends and relatives, who are certainly the most fit persons to take charge of it. Whoever thus comes into the possession of any portion of the personal property of an intestate after his decease, and assumes control over it, becomes responsible for it to the administrator when appointed. He cannot safely deliver it to any one else except the administrator, or some one who shows a better right to it than himself. This must be so upon principle, for otherwise the personal property of a decedent might easily be placed beyond reach before administration granted, and where no one could be found who had it or was responsible for its value."

It is well settled in this State that, on the decease of an intestate, the title to his personal effects remains in abeyance until the appointment of an administrator, and then vests in him, in trust, in his official capacity, as of the time of the intestate's death, and he is entitled to the possession of such assets, and to manage the property for the purposes of his trust. *Palmer's Appeal*, 1 Doug. 424; *Cullen v. O'Hara*, 4 Mich. 132; *Wales v. Newbould*, 9 Id. 83; *Morton v. Preston*, 18 Id. 60; *Gilkey v. Hamilton*, 22 Id. 283; and *Albright v. Cobb*, 30 Id. 359. Until settlement and distribution of an intestate's estate, the administrator alone can collect and enforce payment of the demands due. *Hollowell v. Cole*, 25 Mich. 345. There was no person authorized, in this case, to bring an action until the administrator, was appointed; consequently, the statute of limitations did not begin to run until that time.

Objection is made to some of the testimony offered by

the plaintiff relating to the ownership of the crops grow-
ing upon the farm.    We think this testimony was com-
petent.    It was proper for the plaintiff to show ·what
property was situate upon the farm at the time of the
death of Mr. Crippin, as well as what crops were growing
there at the time defendant took possession of them and
disposed of them.    The question was asked, of one of
plaintiff's witnesses, what personal property her father had
on that farm, and she stated that there were certain crops
that were not harvested at the time of his death.    This
was objected to because the title to the farm was joint as
between husband and wife, and title to the crops could
only be shown by showing the record. · This testimony was
competent upon the plaintiff's theory of the case.    It was
contended by him that some arrangement or understand-
ing was had between Mr. Crippin in his lifetime and· his
wife that the crops were to belong to the husband.    It
was upon this theory that the plaintiff claimed to be
entitled to recover for the whole crop.    If this theory
were substantiated, it would not matter who owned the
farm.    If the wife had been the sole owner of the farm,
and the husband had worked and cropped it, and ·was to
own all the crops growing there, and they were his at the
time of · his death, the administrator would have had the
right to recover their value.    Proof of the title to the
farm in defendant would not, under such circumstances,
show the title of the crops growing on the farm in her.
We think that there was testimony supporting the plaint-
iff's theory of the case, as presented by the court to the
jury, so that whoever had the title to the farm could not
affect the legal title to the crops unharvested at the time
of the death of Mr. Crippin; and that the question of the
plaintiff's right to recover for the value of them was fairly
submitted to the jury upon the theory of some arrange-
ment between the parties as to the title.

Defendant's first request was properly refused by the court, as there was evidence in the case from which the jury might find that the plaintiff was entitled to recover the value of the whole property, and under this testimony the plaintiff could not be limited to the recovery of one-half of the value.

As to the second request of defendant, it may also be said that if the jury found that Crippin planted the crops, and was to have all that was raised upon the farm, under some arrangement made with his wife, then the plaintiff was entitled to recover for the crops growing upon the farm at the time of Mr. Crippin's death, which were taken and appropriated by the defendant.

The defendant's remaining requests have been already discussed.

We have examined the whole record carefully, and are satisfied that the questions presented on the trial below were fairly submitted to the jury as questions of fact under the charge of the court, which we think was in accordance with well-established principles of law, as settled in this State.

The judgment is affirmed.

The other Justices concurred.