MICHIGAN TRUST CO. *v.* CITY OF GRAND RAPIDS.

1. TAXATION—COLLECTING OFFICERS MUST ACT WITHIN LAW.
Tax exactions, property or excise, must rest on legislative enactments, and collecting officers may act only within express authority conferred by law.

2. STATUTES—CONSTRUCTION—TAXATION.
Scope of tax laws may not be extended by implication or forced construction, and language, if dubious, is not resolved against taxpayer.

3. EXECUTORS AND ADMINISTRATORS—TITLE TO PERSONALTY.
Title to personal property, on owner's death, passes to his executor or administrator on appointment.

4. DESCENT AND DISTRIBUTION—TITLE TO REALTY.
Title to real estate, on owner's death, descends immediately to his heirs, subject to be divested for payment of decedent's debts.

5. EXECUTORS AND ADMINISTRATORS—TITLE TO PERSONALTY.
Title to personal property of decedent vests in administrator or executor for purposes of administration, at conclusion of which balance remaining will be distributed.

6. SAME—TITLE TO PERSONALTY REMAINS IN ABEYANCE UNTIL ADMINISTRATION GRANTED.
Title to personal property, on death of owner, remains in abeyance until administration is granted, and then vests, as of time of his death, in his executor or administrator.

7. TAXATION—TRUSTS—TITLE TO PERSONALTY.
Personal property in hands of trustee is assessed to trustee and not to beneficiaries, because legal title is in trustee.

8. SAME—CHANGE OF OWNERSHIP—EXECUTORS AND ADMINISTRATORS.
On death of owner of personal property there was change of ownership by reason of title thereto vesting in executor, and therefore, under statute, there was no authority for spreading taxes against said property not assessed in owner's lifetime (1 Comp. Laws 1929, § 3548).

9. SAME—RECOVERY OF TAXES PAID UNDER PROTEST.

> Executor paying, under protest, taxes illegally assessed against
> personal property formerly owned by deceased, is entitled to
> recover same, in action therefor.

Appeal from Superior Court of Grand Rapids; Shaw (Arthur F.), J. Submitted January 18, 1933. (Docket No. 41, Calendar No. 36,933.) Decided April 4, 1933.

Assumpsit by Michigan Trust Company, individually and as executor of the last will of S. Porter Tuttle, deceased, against City of Grand Rapids to recover taxes paid under protest. The Board of Education of City of Grand Rapids, State of Michigan, and County of Kent intervened as defendants. Judgment for defendants. Plaintiff appeals. Reversed, and judgment ordered entered for plaintiff.

*Butterfield, Keeney & Amberg* and *Harry Shulsky,* for plaintiff.

*Dale Souter,* for defendant city.

*Ganson Taggart,* for intervening board of education.

*Paul W. Voorhies,* Attorney General, and *Hugh E. Wilson,* Assistant Attorney General, for intervening State.

*Bartel J. Jonkman,* Prosecuting Attorney, and *Fred N. Searl,* for intervening county.

POTTER, J. Plaintiff sued defendant to recover taxes paid under protest. From a judgment for defendant, plaintiff appeals. S. Porter Tuttle, a resident of Grand Rapids, died August 30, 1930. Plaintiff was appointed executor of his estate. In

1931 the State board of tax commissioners ordered the levy against plaintiff of taxes on personal property which had belonged to deceased, in its hands, claimed to have been omitted from the tax roll for previous years. Taxes aggregating $37,346.28 were assessed against plaintiff, paid by it under protest, and suit is brought to recover them back.

(1) "Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer." *In re Dodge Brothers*, 241 Mich. 665.

(2) The right claimed by defendants to assess to plaintiff the tax in question, if it exists, must be found in 1 Comp. Laws 1929, § 3548, which provides for the reassessment of property, not assessed for previous years and which ought to have been assessed, for taxes.

This statute provides the omitted property reassessed (a) "shall be listed for taxation upon the next assessment roll that shall be made and shall be valued as all other property." (b) The tax "shall constitute a charge against the person and property and be collected as other taxes." (c) "In case of change in ownership of the property omitted, said taxes shall not be spread against said property prior to the last change of ownership."

(3) Was there a change of ownership of the personal property of S. Porter Tuttle upon his death and the appointment of plaintiff as executor of his will?

The title to personal property of decedent at his death passes to his executor or administrator upon appointment, and rests in them absolutely; but the title to real estate descends immediately to his heirs, subject to be divested for the payment of decedent's debts. *Palmer's Appeal,* 1 Doug. 422; *Powell* v. *Pennock,* 181 Mich. 588.

The title of an administrator or executor of a decedent to the personal property of deceased is so vested for the purposes of administration, at the conclusion of which the balance remaining will be distributed. *Palmer's Appeal, supra; Windoes* v. *Colwell,* 247 Mich. 372.

The title of personal property, upon the death of a decedent, remains in abeyance until administration is granted in his estate, and is then vested, as of the time of his death, in his executor or administrator. *Cullen* v. *O'Hara,* 4 Mich. 132.

The title to personal property does not pass to the next of kin. *Morton* v. *Preston,* 18 Mich. 60 (100 Am. Dec. 146). An executor or administrator appointed by the probate court is an officer of that court, who has title to the assets of the estate of deceased for the purpose of collecting and disbursing of the same for the benefit of creditors, the beneficiaries under the will, or the next of kin. *Gilkey* v. *Hamilton,* 22 Mich. 283. The legal estate in personal property upon the death of the owner thereof, vests absolutely in his executor or administrator. *Foote* v. *Foote,* 61 Mich. 181.

"It is well settled in this State that, on the decease of an intestate, the title to his personal effects remains in abeyance until the appointment of an administrator, and then vests in him, in trust, in his official capacity, as of the time of the intestate's death, and he is entitled to the possession of such

assets, and to manage the property for the purposes of his trust. *Palmer's Appeal,* 1 Doug. 422, 424; *Cullen* v. *O'Hara,* 4 Mich. 132; *Wales* v. *Newbould,* 9 Mich. 45, 83; *Morton* v. *Preston,* 18 Mich. 60 (100 Am. Dec. 146); *Gilkey* v. *Hamilton,* 22 Mich. 283; and *Albright* v. *Cobb,* 30 Mich. 355, 359." *Parks* v. *Crippin-Norris,* 101 Mich. 71, 77.

"The general rule is that title to personal property of a decedent, testate or intestate, vests in the personal representative until administration is completed and the estate is fully settled and distributed, or until he chooses or is forced to part with it earlier. 18 Cyc. p. 353, and cases cited. This rule had been recognized in this State and in intestate cases has always been followed. *Cullen* v. *O'Hara,* 4 Mich. 132, 138; *Miller* v. *Clark,* 56 Mich. 337, 341; *Parks* v. *Crippin-Norris,* 101 Mich. 71, 76, 77." *In re Reidy's Estate,* 164 Mich. 167.

" 'It is well settled in this State that, on the decease of an' intestate, the title (legal title) to his personal effects remains in abeyance until the appointment of an administrator, and then vests in him, in trust, in his official capacity, as of the time of the intestate's death, and he is entitled to the possession of such assets, and to manage the property for the purposes of his trust.' *Parks* v. *Crippin-Norris,* 101 Mich. 71.

"See, also, *Cullen* v. *O'Hara,* 4 Mich. 132; *Palmer* v. *Palmer,* 55 Mich. 293; *Miller* v. *Clark,* 56 Mich. 337; *Morris* v. *Vyse,* 154 Mich. 253 (129 Am. St. Rep. 472); *In re Reidy's Estate,* 164 Mich. 167. And, except under special circumstances, such administrator, or other personal representative, as holder of the legal title, is alone authorized to bring an action for the recovery of a debt due to the estate. *Cullen* v. *O'Hara, supra; Gilkey* v. *Hamilton,* 22 Mich. 283; *Hollowell* v. *Cole,* 25 Mich. 345; *Parks* v. *Crippin-Norris, supra; Buchanan* v. *Buchanan,* 75 N. J. Eq. 274 (71 Atl. 745, 22 L. R. A. [N. S.] 454, 138 Am. St. Rep. 563, 20 Ann. Cas. 91)." *Brobst* v. *Brobst,* 190 Mich. 63.

The indebtedness of an heir to the estate of a deceased person may be set off by the administrator against his distributive share in the assets of the estate consisting of personal property and applied by the administrator in payment of the debt due the estate from the heir, but,

"The title to the real estate vests in the heir at the date of the death of the ancestor. Real estate is not assets in the hands of a personal representative, and, unless otherwise charged by the terms of a will, is subject only to the contingency of a sale of so much thereof as may be necessary to pay the debts of the estate in case there is not sufficient personal estate for that purpose. This statutory contingency is a modification of the common law, and no sale of real estate to pay debts of the estate could be made before this modification." *Marvin* v. *Bowlby,* 142 Mich. 245, 255 (4 L. R. A. [N. S.] 189, 113 Am. St. Rep. 574, 7 Ann. Cas. 559).

For the reason the legal title to personal property, upon the death of the ancestor and the appointment of an executor or administrator, passes as of the date of the death of the ancestor, to the executor or administrator and the heir indebted to such estate owes him, he may apply what the heir owes him in payment of what he owes the heir. While as to real estate, the title of which passes upon the death of the ancestor to the heir unless otherwise directed by will, no set-off is possible. 3 Comp. Laws 1929, § 14132. In addition to the general rule above stated, relating to set-off, 3 Comp. Laws 1929, § 14137, provides:

"In suits brought by executors and administrators, demands existing against their testators or intestates, and belonging to the defendant at the time of their death, may be set-off by the defendant in the same manner as if the action had been brought by and in the name of the deceased."

The right of set-off recognized by statute and by the decisions above mentioned, can exist only when the executor or administrator of the estate of the deceased has title to property.

During the lifetime of a person the title of his personal property rests in him. Upon his death he no longer can hold property. The legal title of personal property passes to his executor or administrator. They may sue for it, control it, and at the conclusion of administration use it for the purpose of paying the debts of heirs to the estate. Debts of the estate may be set off by persons to whom owing, in suits brought by executors and administrators against them. This would not be possible unless there was a change in ownership from decedent to the executor or administrator.

Defendant has recognized and acted upon this change in ownership. Prior to his death, personal property taxes were assessed against S. Porter Tuttle. Since his death and the appointment of the plaintiff as executor, personal property taxes against the estate of S. Porter Tuttle, deceased, are levied and assessed against plaintiff. Why? For the obvious reason that defendant recognizes there was a change of ownership at the death of Mr. Tuttle and the appointment of plaintiff by the probate court as executor of his will.

In *People* v. *Sears,* 344 Ill. 189 (176 N. E. 273), a question similar to that involved was before the court. The statute of Illinois provided for the reassessment of omitted taxes under substantially similar conditions that omitted taxes may be reassessed in this State. That act provided:

"No such charge for tax and interest for previous years, as provided for in the preceding section, shall be made against any property prior to the date of ownership of the person owning such property at the

time the liability for such omitted tax was first ascertained.'' (5 Smith-Hurd Illinois Stat., chap. 120, § 263.)

During Sears' lifetime none of the omitted property was assessed against him. He paid all taxes levied and assessed against his property. The property which was reassessed against him was property which after his death it was discovered had been omitted from the assessment roll in his lifetime. The court gave exhaustive consideration to this case. It was argued by eminent counsel. The court said:

"The liability of the owner of property for the payment of taxes is purely statutory. The law is well settled that the legislative power of a State to provide for the levy and collection of taxes is unlimited, except as restricted by the State and Federal Constitutions. (*Chambers* v. *People, ex rel. Fuller,* 113 Ill. 509.) The obligation of the citizen to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected only in the mode pointed out by express statute. (Cooley on Taxation [2d Ed.], p. 15.) The revenue act of 1872 provided for the assessment of real or personal property which had been omitted in the assessment of any year and the placing of it on the assessment and tax books.''

The important question was whether or not there had been a change in ownership of the property. That is the important question here. The Illinois court said:

"At the death of Sears, in 1914, there was a change of ownership. His will gave.all his property to his widow at the instant of his death, subject only to the payment of his debts. There was no tax debt at that time, because during his lifetime there had been no assessment for omitted taxes. After his death and the change of ownership to his widow any

charge against the property for taxes and interest for previous years was expressly prohibited by section 278. If there is any doubt whether the sections in question authorized a charge for taxes against the legatee on account of property omitted from assessment by a deceased owner and devised by him, the language of the statute cannot be extended beyond its clear import to make the property subject to the taxation. Such statutes imposing a tax, in case of doubt, are construed most strongly against the government and in favor of the citizen. (*Fidelity & Casualty Co.* v. *Board of Review,* 264 Ill. 11 [105 N. E. 704]; *People, ex rel. City of Chicago,* v. *Barrett,* 309 Ill. 53 [139 N. E. 903].) There could be no valid subsequent assessment, for the reason that the statute expressly prohibited an assessment after a change of ownership. While the executrix held the legal title the sole beneficial ownership was in the legatee or heir. If Sears had transferred all of his money and personal property to another in his lifetime there would have been a change of ownership, which under the express terms of section 278 would have prevented any charge against the property for taxes or interest of previous years. He did make a transfer by his will, which had the same effect at the moment of his death as a transfer by a grant and delivery of possession would have had in his lifetime. The fact that the new owner of his property was his widow made her position no different from that of a stranger, as no exceptions are made in section 278 to its general prohibition against the assessment of omitted property after a change of ownership.''

The court held, under the provisions of the Illinois statute providing for the assessment of real or personal property omitted from taxation by decedent during his lifetime, there was no basis for an attempt of the board of review to assess the property omitted by Sears in his lifetime against Mrs. Sears,

either as his legatee or the executrix of his will. It is said:

"The moment he died her rights under his will attached. Her title was then vested, and no change in the law thereafter made could disturb such vested rights. *Rowlett* v. *Moore,* 252 Ill. 436 (96 N. E. 835, Ann. Cas. 1912D, 346). The title to all his property was vested in her, subject to his debts. Since there could be no tax without an assessment there was no debt, and since section 278 prohibited any assessment against the property prior to the date of her ownership, there never could be any assessment or any debt. 'The moment the testator or intestate dies, then the rights of the devisees or heirs attach at once, for the title is then already vested, and any change in the law after that could not affect such vested rights.' *Sturgis* v. *Ewing,* 18 Ill. 176. Mrs. Sears from the death of her husband was the sole and absolute beneficial owner of all the property which he owned at his death, subject only to the payment of his lawful debts. It was not within the power of the State thereafter, by mere legislation, to impose upon her any additional obligation or to create any charge against her property. To do so would be a taking of her property without due process of law. The legislature has the undoubted right to repeal all legislative acts which are not in the nature of contracts or private grants, but the repeal of a law cannot affect or impair rights which have been acquired under it. So of the adoption of a new law. It can have no retrospective operation so far as vested rights are concerned. Statutes are not to be given a retrospective operation except where it is manifest the legislature intended they should have such operation, and it is not competent even for the legislature to give such operation to an act where it will affect existing vested rights. *Dobbins* v. *First National Bank,* 112 Ill. 553.

''Since the statute at the time of the death of the decedent made no provision for the assessment after his death of personal property which he had owned but which had been omitted from assessment in his lifetime in various years, as claimed by the bill, the decree of the circuit court is without foundation in the law for its support.''

(4) It is claimed that in insurance cases, change of interest of the insured does not affect liability on the policy. That depends on the terms of the policy, provision of the statute, and construction by the court.

In *Lappin* v. *Charter Oak Fire Ins. Co.*, 58 Barb. (N. Y.) 325, the policy of insurance contained a clause that it should be void, in case there was any change of title in the property insured, unless the consent indorsed upon the policy was obtained. While this policy was in force the insured died, and suit was brought by his administrator. It was said:

''It seems clear, therefore, that the policy of insurance by the most clear and explicit terms and provisions thereof, became void and ceased to have any binding force, upon the death of the assured, and the vesting of the title to the property insured in the heirs-at-law. That this was a change of title, from the assured to others, cannot be denied, and it brings the case within the express terms of the policy.''

A similar question was before the supreme court of New York in *Hine* v. *Woolworth*, 93 N. Y. 75 (45 Am. Rep. 176). There, one Brouillet had an insurance policy which contained substantially the same provisions as involved in *Lappin* v. *Charter Oak Fire Ins. Co.*, above referred to. Brouillet died. After his death a loss occurred, and the insurance company defended upon the ground there had been a change of interest. The court said:

"When Brouillet died and the title to the property was transferred to his heirs there was such a change of interest as avoided the policy until the consent of the company should be obtained."

A case somewhat analogous was before the court in *Cook* v. *Kentucky Growers Ins. Co.*, 24 Ky. Law Rep. 1956 (72 S. W. 764). There a policy was issued to the insured. There was no provision in the policy that it was payable to his executors, administrators, or assigns. The defendant company was a mutual insurance company in which losses are liabilities of the members. Liability was mutual. Obligations reciprocal. The court held the insurance company was not liable for a loss which occurred after the death of the insured to his heirs, because such heirs were not liable for the premium; were not members of the company, and that mutuality, which lies at the basis of mutual insurance, having been destroyed, the company could not be held liable because the insured had ceased to be a member.

In *Gillon* v. *Northern Assurance Co.*, 127 Cal. 480 (59 Pac. 901), the real estate was, during the lifetime of the deceased, transferred by deed operative either upon the delivery of the deeds or at the death of the grantor. After the insurance was issued and the death of the insured, a fire occurred, and the court, in denying liability of the insurance company, said that though the deeds were executed to avoid the expense of probating the estate, "The conveyance of the buildings by the insured operated to transfer the title in the property to Gillon, either at the date of the deed or at the time of the grantor's death," and held the company was not liable upon the policy.

A similar question apparently was discussed by counsel in *Westchester Fire Ins. Co.* v. *Dodge*, 44 Mich. 420, where it is said:

"Whether the death of a person insured before a loss occurred would render void the policy, we are not called upon to determine in this case. By the terms of the policy the loss was made 'payable to Chester Downer of Sharon, Vermont, as his mortgage interest may appear,' and under such a provision the mortgagee could not be cut off from the protection which the policy afforded him, by the death of the person to whom the policy was issued."

The general rule is thus summed up in 4 Joyce on the Law of Insurance (2d Ed.), § 2289, p. 3908:

"If, however, a policy is conditioned to be void if the interest of the insured shall be changed in any manner, whether by act of the insured or by operation of the law, it has generally been held that the death of the insured will avoid the policy. So where a fire policy was conditioned to be void 'if, without the written consent of the company first had and obtained, the said property shall be sold or conveyed and the interest of the parties therein be changed in any manner, whether by the act of the parties or by operation of law, or the property shall become incumbered by mortgage, judgment, or otherwise,' and the insured died intestate as to all his property, it was held that the policy was void by change of interest. Where the policy is conditioned to be void 'in case of any sale, transfer, or change of title in the property insured,' it is held that the policy ceased to have any force upon the death of the insured, and the vesting of the title in his heirs-at-law."

(5) Personal property in the hands of a trustee is assessed to the trustee and not to the beneficiaries of the trust, for the reason the legal title is in the trustee and not in the beneficiaries of the trust. *City of Detroit* v. *Lewis,* 109 Mich. 155 (32 L. R. A. 439); 1 Perry on Trusts (7th Ed.), § 331; 1 Lewin on Trusts (13th Ed.), p. 236; Cooley on Taxation

(2d Ed.), p. 375; 25 Am. & Eng. Enc. Law (1st Ed.), p. 153; *Latrobe* v. *Mayor of Baltimore,* 19 Md. 13; *Dorr* v. *City of Boston,* 6 Gray (72 Mass.), 131; *Davis* v. *Macy,* 124 Mass. 193; *Smith* v. *Byers,* 43 Ga. 191; *Greene* v. *Mumford,* 4 R. I. 313; *Catlin* v. *Hull,* 21 Vt. 152; *People, ex rel. Western R. Co.,* v. *Assessors of Albany,* 40 N. Y. 154; *Lewis* v. *Chester Co.,* 60 Pa. 325.

(6) It seems clear upon principle and authority, that, upon the death of S. Porter Tuttle, and the appointment of plaintiff by the probate court as executor of his will, there was a change of ownership of the personal property in question. Before death it belonged to S. Porter Tuttle. By his death and the appointment by the probate court of plaintiff as executor, there was a change in ownership of such personal property from him, by death, his will operative at his death, and the appointment by the probate court of plaintiff as executor, from S. Porter Tuttle to plaintiff, and because of that change of ownership of the personal property, which had belonged to decedent in his lifetime, from him to plaintiff, the taxing power of defendant could not spread against plaintiff a tax "against said property prior to the last change of ownership," which is what was done. It follows that plaintiff is entitled to recover.

Judgment reversed, and judgment directed to be entered for plaintiff against defendant for the amount of taxes involved, with costs.

McDonald, C. J., and Clark, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.