W. W. MILNE et al., Respondents, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 21, 1911.

1. COMMON CARRIERS: Carriage of Goods: When Carrier's Liability Commences. Under some circumstances, a common carrier may become responsible for property intrusted to its care for transportation, even before a bill of lading is issued; and its duty and obligation always attach as soon as the delivery of goods for transportation is completed, so as to place upon it the exclusive duty of seeing after their safety.

2. ——: ——: What Constitutes Delivery. Where a common carrier places a person in charge of its business in a depot and holds him out to the public as possessing authority to receive shipments, a delivery to and an acceptance by him is a delivery to the carrier.

3. ——: ——: ——: Jury Question. Where there is a controversy as to whether or not the goods were actually delivered to a common carrier for transportation and received by it, so as to invoke the obligation entailed upon it by law, the question is usually one for determination by the jury.

4. ——: ——: ——: ——. In an action against a common carrier for the value of goods alleged to have been delivered to it for transportation and lost while in its possession, *held,* under conflicting evidence, that the question of whether defendant accepted the goods for transportation was for the jury.

5. ——: ——: ——: Bill of Lading: Prima Facie Evidence. A bill of lading, fair on its face, is prima facie proof

155 App.—30

of the carrier's receipt and acceptance for transportation of the goods therein described, and the burden is on the carrier to overthrow it.

6. **TRIAL PRACTICE: Credibility of Witnesses: Right of Trier to Disregard Uncontradicted Testimony.** Where the trial is to the court, it may disregard all evidence offered by the one upon whom rests the burden of proof, even though the other party offers no evidence; the matter of determining the weight of the evidence and the credibility of the witnesses being within its province.

7. **APPELLATE PRACTICE: Conclusiveness of Finding.** A finding by a trial court sitting as a jury will not be disturbed on appeal for insufficiency of the evidence, unless there be no substantial evidence to sustain it upon any theory.

8. **COMMON CARRIERS: Carriage of Goods: Delivery to Carrier: Bills of Lading: Evidence: Burden of Proof.** While the contractual clauses of a bill of lading are immune from variation or attack by parole testimony, except for fraud, accident or mistake, the receipt for the articles it describes is in no sense conclusive, and the carrier will be permitted to show that, notwithstanding the recital of the receipt of the goods, they were in fact never delivered to it, but the burden of proof, in such case, is on the carrier to show the goods were never delivered to it and therefore not in its possession.

9. ———: ———: ———: **Sufficiency of Evidence.** Evidence *held* to support a finding that a common carrier accepted a car of lumber for transportation and issued its bill of lading therefor.

10. **EVIDENCE: Invoice Made to Deceased Person: Admissibility as Against Third Person: Res Gestae.** Where the seller of a car of lumber, since deceased, in accordance with his usual course of business, inclosed with the bill of lading an invoice written by himself, and mailed both to the consignee, when the lumber was delivered to the carrier, and at the same time drew on him for part of the purchase price, and it appeared that the seller loaded the car and knew the quantity and quality of the lumber, the invoice was admissible in an action by the consignee against the carrier, to show the facts, being considered a verbal act and admitted under the principles relating to *res gestae.*

11. ———: **Memoranda, When Admissible: Res Gestae.** Memoranda of account, jotted down on slips of paper and transmitted to the proper office, to be entered upon the books contemporaneously with the transaction they represent, when made in accordance with the regular custom and usage of business, are competent to be received in evidence as a part of the *res gestae*, just as the books are.

12. ———: Books of Account: Entries of Deceased Person: Res Gestae. Self-serving entries in a book of account, made by a decedent in his own handwriting contemporaneously, or fairly so, with the transactions they record and in accordance with his usual course of business, are admissible in evidence, both on the ground of *res gestae* and because of the necessities of the case.

13. ———: Private Memoranda, When Admissible: Res Gestae. Contemporaneous memoranda made by a decedent in the usual course of business, whêre he had knowledge of the facts as to a transaction, are admissible in evidence on the ground of the necessities of the case and as a part of the *res gestae*, though not made to be entered in a permanent book; this principle extending to cases where the party who made the entry is insane or detained by a serious illness, and probably to a case where he is absent from the jurisdiction.

14. Damages: Excessive Verdict: Common Carriers: Action for Freight Destroyed. In a suit against a common carrier for the value of lumber delivered to it for transportation and lost while in its possession, the verdict, under the evidence, is *held* not to be excessive.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

Affirmed.

*W. F. Evans* and *Robert & Robert* for appellant.

(1) The demurrer to the evidence should have been sustained. The lumber was never delivered to the defendant. Yoakum v. Dryden, 26 S. W. 312; Railroad v. Hodde, 42 Tex. 467; O'Bannon v. Exp. Co., 51 Ala. 481; Railroad v. Echols, 97 Ala. 556; Truax v. Railroad, 3 Hous. (111 Dela.) 233; Tate v. Railroad, 78 Miss. 842. (2) There was no evidence that any lumber was ever placed in the car. The so-called "invoice" of the Benton Lumber & Mfg. Co. was inadmissible and proved nothing. It was not a book entry, not shown to have been made contemporaneously with a transaction, was simply an unsigned inspector's report, not shown to have been made in the usual course of business, nor that it was

Easley's duty to write such a paper, nor that he had any knowledge of the facts of which he wrote, and was a memorandum of one not a party to this suit. Wilcoxsen v. Dorr, 139 Mo. 673; Robinson v. Smith, 111 Mo. 207; Milling Co. v. Walsh, 108 Mo. 277; Meek v. Railroad, 129 Mo. App. 507; Council v. Railroad, 123 Mo. App. 444; Nelson v. Nelson, 90 Mo. 460; Wells v. Hobson, 91 Mo. App. 379; Owen v. Bray, 80 Mo. App. 526; Martin v. Nicholls, 54 Mo. App. 594; Chaffee.v. U. S., 18 Wall. 516; 1 Smith L. C. 575; 1 Greenleaf Ev. (16 Ed.), pp. 204, 205; Jones Ev. (2 Ed.), p. 401. (3) The so-called invoice was at the most evidence of a collateral matter and therefore inadmissible against the defendant. Jones on Evidence (2 Ed.), sec. 319; Chambers v. Bernasconi, 1 Tyrw. 342; s. c., 4 Tyrw. 531; 1 Smith L. Cases 581; Woodes v. Dermet, 12 N. H. 510; Little v. Wyatt, 14 N. H. 23; Poultney v. Ross, 1 Dall. 238; Deas v. Dolby, 1 N. & McC. 436; Williamson v. Doe, 7 Black J. 12. (4) Evidence of the transactions between the plaintiffs and Easley was incompetent. The communications between plaintiffs and their agent were not binding upon the defendant. Furthermore, Easley was dead. O'Neil v. Crain, 67 Mo. 250; Schluter v. Wiedenbrocker, 23 Mo. App. 440; Schweppe Gro. Co. v. Nolin, 83 Mo. App. 76; Hutchinson v. Brassfield, 86 Mo. App. 40; R. S. 1899, sec. 4652; Cahill v. Elliott, 54 Mo. App. 387.

*W. H. Allen* for respondents.

(1) There was ample evidence both of the delivery of the goods and the due issuance of the bill of lading. And where, as in this case, the court sitting as a jury, hears the evidence and renders a general judgment, and no instructions or declarations of law are asked or given, the finding of the trial court will not be disturbed on appeal if there is any substantial evidence to support the judgment. Crain v. Peterman, 200 Mo. 298; Ins. Co. v. McDearmon, 133 Mo. App. 674; Wil-

son v. Reddick, 131 Mo. App. 455; Abbott v. Whitener Gro. Co., 135 Mo. App. 706; Warner v. Close, 120 Mo. App. 211; Keyes Farm and Dairy Co. v. McCrady, 120 Mo. App. 670; Collard v. Burch, 138 Mo. App. 94. (2) A carrier's liability begins when it receives freight for immediate shipment, and is not dependent on the issuance of a bill of lading. Gregory v. Railroad, 46 Mo. App. 574; Berry v. Railroad, 122 N. C. 1002; Grand Tower, etc., Co. v. Ellmon, 89 Ill. 244; Garner v. Railroad, 79 Ark. 356; Mason v. Railroad, 25 Mo. App. 473; Lackland v. Railroad, 101 Mo. App. 420. (3) Where a railroad company places a car on its side track with the agreement implied, if not expressed, that it will move the car when loaded and carry the freight to its destination, and the car is loaded by the shipper and notice thereof given to the railroad company, and nothing remains to be done by the shipper, the delivery is complete, and the company becomes liable for the loss, whether a bill of lading were issued or not. Railroad v. McKenzie, 75 Ark. 100; Railroad v. Lymser, 38 Ill. 354 (87 Am. Dec. 301); Railroad v. Murphy, 60 Ark. 330. (4) A memorandum or entry made contemporaneously with a transaction, in the regular course of business, by one who had knowledge of the facts in question, at a time when no controversy existed concerning the matter, is admissible in evidence after the death of the person making it upon proof of the handwriting of the deceased. Jones on Evidence (2 Ed.), sec. 319; Greenleaf on Evidence (16 Ed.), sec. 120a; Bader v. Schult & Co., 118 Mo. App. 22; Hoover v. Gehr, 62 Pa. St. 136; Adell v. Culvert (Pa.), 42 Am. Dec. 317; Railroad v. Murphy, 60 Ark. 333. (5) The invoice is admissible in evidence just as if the entries contained therein had been made in the books of the deceased. There is no difference between an entry of this sort and a so-called book entry. Jones on Evidence (2 Ed.), sec. 319; Railroad v. Iron Works Co., 117 Mo. App. 165; Stephan v. Metzger, 95 Mo. App. 609; Kendall, Admr., v. Field,

14 Me. 30; Smith v. Smith, 4 Harrington (Del.) 532; Roland v. Burton, 2 Harrington (Del.) 288.

NORTONI, J.—This is a suit against a common carrier on the obligation of an insurer annexed by law to its calling, for the value of a carload of lumber which was lost to plaintiffs while in its possession. Plaintiffs recovered and defendant prosecutes the appeal. Plaintiffs are co-partners and conduct a wholesale lumber business in the city of St. Louis, and defendant is an incorporated railroad company, engaged in the business of a common carrier of freight between Price, Arkansas, and St. Louis, Missouri. The lumber involved was loaded on defendant's car at what is spoken of in the evidence as a "blind switch" at Price, in the State of Arkansas, on December 16th, and afterwards consumed by fire that night. The "blind switch" referred to at Price is but a railroad siding where cars are loaded and at which defendant is not represented by a depot or station agent. Price is located about twelve miles east of Hot Springs, and it is the rule for bills of lading with respect to such cars as are loaded there to be issued by defendant's agent at a near-by station. Defendant resists liability for the car of lumber on the theory that it had not received it for shipment at the time of its loss and insists that, though its bill of lading was outstanding therefor, the same was procured by plaintiffs' consignor and agent through a fraudulent representation to the assistant of its agent at Hot Springs.

There is no doubt that in some circumstances a common carrier may become responsible for the property intrusted to its care for transportation even before a bill of lading is issued; but the proof does not disclose that situation here. There is no evidence that the car was placed upon the siding at Price for the particular purpose of receiving this shipment of lumber and, therefore, operating an invitation to load it, nor does it appear defendant's agent accepted the goods with directions

to transport the same and deliver to the consignee, aside
from the transaction which occurred when the bill of
lading was issued. The liability on this score must be
determined alone by reference to the acceptance of the
shipment under the bill of lading and its recital as to de-
fendant's receiving the same in good order for transpor-
tation to the plaintiffs at St. Louis. Plaintiffs intro-
duced the bill of lading as prima facie proof of their
case.

It is made to appear on the part of defendant that
one, Easley, who was a dealer in lumber and a shipper
from the point in question, called upon defendant's
station agent at Hot Springs on December 16th and
informed him that he had loaded a car of lumber at de-
fendant's side track at Price, twelve miles from there,
for plaintiffs, and requested the agent to issue a bill
of lading therefor. Defendant's agent says he declined
to issue the bill of lading for the reason he had not seen
the car of lumber, and further that it was defendant's
rule that, for cars consigned to St. Louis from that point,
an agent east of Price should issue the bill of lading,
but afterwards a bill of lading was issued to Easley for
the identical car of lumber by his assistant in the office
and that such bill of lading was obtained from his as-
sistant by a false representation on the part of Easley.
Defendant's assistant also testified that Easley called
upon him late in the afternoon and procured the issue
of the bill of lading by him through stating the agent,
Mr. Reamey, had directed it. One, Murphy, also gave
testimony to the same effect, but in force of his state-
ment was greatly impaired in the cross-examination.

It is conceded defendant's assistant had authority
in proper circumstances to issue bills of lading, such as
that involved here, and to sign the agent, Mr. Reamey's,
name thereto as he did in this instance. The bill of lad-
ing for the car of lumber was issued to Easley in the
afternoon and it seems was mailed to plaintiff that
night or the next day with an invoice of the contents

of the car attached. Easley himself was not a witness at the trial, for it appears he departed this life between the time of shipping the lumber and the institution of the suit. There can be no doubt that the duties and obligations of a common carrier with respect to the goods commence with their delivery to it, that is, as soon as the delivery is complete, so as to place upon the carrier the exclusive duty of seeing after their safety. It is true, too, that where the carrier places a person in charge of the business at a depot and holds him out to the public as being qualified with the requisite authority to receive shipments, a delivery to and an acceptance by such agent of the goods is a delivery to the carrier. [Hutchinson on Carriers (3 Ed.), secs. 105, 106, 119.] Where there is a controversy as to whether or not the goods were actually delivered to the carrier for transportation and received by it, so as to invoke the obligation which the law entails with respect to that calling, the question is usually one for the determination of the jury. It is said where one goes to the station of a common carrier and finds a person there in the office asserting authority and exercising the acts which pertain to the occupation of the station agent, he has a right to deal with him as such and if a delivery of goods is made to such person for transportation by the carrier and he accepts it, the question of whether or not the goods were actually delivered to the carrier is one for the jury. [Hutchinson on Carriers (3 Ed.), sec. 106; Ouimit v. Henshaw, 35 Vt. 605; Harrell v. Railroad Co., 106 N. C. 258.] So it is in this case, we believe the question of whether defendant accepted the car of lumber for transportation was one for the jury. In other words, as a jury was waived in this instance, the question was one of fact for the trial court who tried the issue. Be this as it may, the bill of lading is prima facie sufficient as it is fair on its face and the burden was on defendant to overthrow it. The court, as the trier of the fact, was at liberty to reject all of this testimony as to Eas-

ley's procuring its issue by covin if it saw fit to do so, for
such is involved in the province of determining the
weight of the evidence and giving judgment on the cred-
ibility of the witnesses who appear before it on the
stand.   This is true, too, though such statements are
uncontradicted by other proof, for the trier of the fact
may reject the whole as unworthy of belief.   [Gannon
v. Laclede Gas Co., 145 Mo. 502, 46 S. W. 968, 47 S. W.
907.]   Aside from this, there is evidence in the case this
bill of lading was signed by defendant's agent in per-
son and not by the assistant at all.   One of the plaintiffs
gave positive and direct testimony to the effect that
he was familiar with the handwriting and signature of
Mr. Reamey, defendant's agent, and that the signature
to the bill of lading is his.   Furthermore, a letter in
evidence, admittedly written by Mr. Reamey himself
only a few days after the fire consumed the car, and on
that subject says:

"We signed bill of lading December 16th for R. I.
car 52483, containing lumber for Milne Lumber Com-
pany, St. Louis, Missouri, on track at Price station. Car
and contents destroyed by fire night of December 16th.
We have instructions to request you to file claim, sup-
ported by bill of lading and invoice, certifying as to
number of feet, and on receipt will give the matter pre-
ferred attention.   Please answer.

Yours truly,

J. S. Reamey, Agent."

All of this constitutes substantial evidence to the
effect that defendant's agent, Reamey, personally issued
the bill of lading for the car of lumber.   The trial court
found the fact as though the car of lumber had been
delivered to defendant and accepted by it and its bill of
lading issued therefor by its duly authorized agent in
that behalf.   The appellate court will not weigh the
evidence, as the matter of the credibility of the witnesses
and the weight and value to be given to their testimony
is exclusively for the trier of the fact.   It is only where

there is no substantial evidence to sustain the finding upon any theory available to the prevailing party that the appellate court will interfere on that ground and set the judgment aside. [Crain v. Peterman, 200 Mo. 295, 98 S. W. 600; New York, etc., Ins. Co. v. McDearmon, 133 Mo. App. 671, 114 S. W. 57; Baum v. Fryrear, 85 Mo. 151; Smith v. Royse, 165 Mo. 654, 65 S. W. 994.] It appearing that there is substantial evidence in support of the finding that defendant accepted the lumber for transportation and issued its bill of lading therefor, the case is to be considered, of course, as though defendant receipted for the lumber and that it was actually in the car when the bill of lading was issued, unless defendant shows the fact to the contrary. We say this, because, under the accepted rule of decision, a bill of lading issued by the carrier for the receipt of goods or property, is universally declared to be sufficient proof prima facie of the fact of the actual custody of the property by the carrier. [Hutchinson on Carriers (3 Ed.), secs. 157, 158.] Of course, the contractual clauses of a bill of lading are immune from variation or attack by parol testimony, except for fraud, accident or mistake, but the mere receipt for the goods therein involved is in no sense conclusive, and the carrier is permitted, if it can, to show that, notwithstanding the recital of a receipt of the goods, the goods were in truth and in fact never delivered to it. But in such cases, the burden is on the carrier to show the goods were never delivered to it and therefore not in its possession. [Hutchinson on Carriers (3 Ed.), secs. 158, 159, 160, 161, 162, 163.] There is no attempt whatever in this case to prove the lumber receipted for by the bill of lading was not actually in the car, nor was anything elicited from plaintiffs' proof tending to show such to be the fact. By introducing the bill of lading, plaintiffs made a prima facie case to the effect that their agent and consignor had shipped a carload of lumber to them. The bill of lading evinces a shipment of one car initialed

C. R. I. & P., indicating the name of this defendant, numbered 52483, laden with y. p. lbr. from Dan Easley at Price, Arkansas, to these plaintiffs. It is shown in the proof that y. p. lbr., employed in the bill of lading, as descriptive of the articles loaded in the car, is commonly known and understood in the lumber trade to indicate yellow pine lumber. So much then shows a shipment of a car of yellow pine lumber.

To the end of identifying the amount and character of lumber contained in the car, plaintiffs were permitted to introduce in evidence an invoice thereof which they received from Dan Easley annexed to the bill of lad-ing in due course of mail after the shipment. This paper bore the identical date as the bill of lading and, as stated, came to plaintiffs through the United States Mail from Dan Easley, consignor, from whom they had purchased the lumber. It was shown Easley had died since shipping the lumber and that the invoice referred to was in his handwriting. It referred to the identical car of lumber described in the bill of lading in terms, by number, and otherwise, and purports to state the quantity and character of the shipment from Dan Easley to plaintiffs. From this paper, the character of the lumber appears to be pole stocks twelve feet in length, six inches wide and three inches thick, and the total consignment in the car consisted of 11,628 feet. Besides showing that this invoice was in the handwriting of Easley, from whom plaintiffs purchased the lumber, the proof is uncontradicted that such was his usual and customary course of dealing in his business of shipping lumber throughout a number of years. It appears plaintiffs had been buying lumber from Easley for a long time and received twenty-five or thirty cars from him each year and in every instance he inclosed with the bill of lading an invoice such as this one directly to them, indicating the character and quantity of the lumber shipped, and drew upon plaintiffs through the bank for a considerable percentage of its value contemporaneously with the ship-

ment. Defendant objected and excepted to the ruling of court in receiving this evidence and as there is no other evidence of the character and quantity of lumber in the car, it urges the judgment should be reversed because such should not be considered. The argument is that such invoice or memorandum is incompetent, first, in that its reception in evidence impinges the rule against hearsay and, second, that it is not to be accredited as a book of original entry. Though it is not a book of original entry in the usual sense of that term, we are entirely clear in the circumstances of the case that it was properly received in proof as a contemporaneous memorandum of the transaction, made in the usual course of business by the deceased in accord with his custom, and as such is to be considered for probative purposes as a verbal act under the principle relating to the *res gestae.* Very primitive forms of memoranda or indicia of accounts kept are admitted as books of original entry in connection with the oath of the party who kept or constructed the account. In Smith v. Smith's Executrix, 4 Har. (Del.) 532, mere scraps of paper were received as the plaintiff's book of original entry. In Rowland v. Burton, 2 Har. (Del.) 288, the plaintiff, an unlearned man, was permitted to introduce in evidence, as his book of original entry in connection with his oath, a stick on which he had made numerous notches of different size and shape, indicating the items of his account in different amounts, and the ruling was affirmed on appeal. It is conceded that books of original entry may be received in evidence as of the *res gestae* on a showing made by a party having knowledge of the fact that the entries therein were made in the usual course of business and according to the custom of the proprietor, as in the case of Anchor Milling Co. v. Walsh, 108 Mo. 277, 18 S. W. 904. But it is said mere statements of account on a separate sheet of paper, such as an invoice or other paper on which memoranda of accounts are made, do not rise to the dignity of books of

original entry and are therefore inadmissible. The proposition is unsound for where it appears the items or memoranda of account have been jotted down on slips of paper and transmitted to the proper office for entry upon the books contemporaneously with the transactions they represent and in accord with the regular custom and usage of the business, such original memoranda are competent to be received in evidence as of the *res gestae*. Such was expressly decided in Jonesboro, etc., R. Co. v. United Iron Wks., 117 Mo. App. 153, 94 S. W. 726. These cases reflect the view of the courts when the party who made the entries is not shown to be dead or otherwise unavailable as a witness. For the contemporaneousness of the entry, considered together with the fact of the custom and usual course of business, when no inducement to falsify appears, lends a degree of credit and sincerity to the matter which give rise to the rule that the courts will treat them as verbal acts under the principle which obtains with respect to the *res gestae* throughout the law. On the other hand, when it is shown the party who made the entries is dead and that such entries are in his handwriting entered in accord with his custom, contemporaneously, or fairly so, in connection with the transactions they represent in the usual course of the business of the entrant, books of original entry are received in evidence in favor of the party so making the entry notwithstanding they are in his own favor, both on the grounds of the *res gestae* and because of the necessities of the case. Such is the undoubted rule well established. [See Bader v. Schult & Co., 118 Mo. App. 22, 94 S. W. 834; Greenleaf on Evidence (16 Ed.), secs. 120a, 120b, 120c; Jones on Evidence (2 Ed.), sec. 319, et seq.] Such books of original entry, though primitive and unusual in character, are received in evidence, too, under the identical rule of decision when it appears the party who made the entries is dead. The character of the book itself and the capability of its keeper displayed in the form of entries therein in no material degree add

to the fact of competency though such may influence the probative worth and effect for the purpose of the trier of the fact. For instance, in Kendall v. Field, 14 Me. 30, the plaintiff's intestate had been employed by defendants to hew timber for them in the woods and while so employed entered daily on a shingle the quantity hewed by him each day, etc. At the suit of his administrator for compensation under the contract, on identifying the handwriting of the deceased and showing the fact the entries were contemporaneously made by the custom of deceased in the usual course, the shingle was received in evidence as of the *res gestae* as his book of original entry and the point was affirmed on appeal. But it is said though such may be the rule as to books of original entry, it is not so as to mere memoranda of the transaction made at the time by the deceased party, though it be in the usual course of business according to his custom, when there appears to be present no inducement to falsify the fact, unless it is entered in some repository for the systematic preservation of accounts. After having given the subject an attentive investigation, we are persuaded the argument advanced is unsound, for in the circumstances of the case, we have been unable to discern any distinction between the competency of books of original entry and contemporaneous memorandum made by deceased at the time in the usual course of business according to his established custom where it appears he had knowledge of the facts and the memorandum is in his handwriting as to such matters. Mr. Jones, in his work on Evidence (2 Ed.), sec. 319, accurately states the law as follows:

"It has long been a settled rule of law both in England and in this country that a minute or memorandum in writing, made at the time when the fact it records took place, by a person since deceased, in the ordinary course of his business, corroborated by other circumstances which render it probable that the fact occurred, is admissible evidence. Entries of this class are not received

on the theory that they are declarations against the interest of the person who made them, but on the ground that they were made in the *due course of business* as part of the *res gestae;* and this is deemed to afford sufficient presumption that the facts are as stated in the memorandum. Said a learned judge: 'What a man has actually done and committed to writing when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of the jury.' The entries to be thus admissible should be *comtemporaneous* with the act to be proved, that is within so short a time thereafter as reasonably to be considered a part of the transaction, in the due discharge of duty and by persons having *knowledge of the facts.* Such memoranda do not generally afford evidence, except as to those matters necessary to be recorded; in other words, they are *not evidence of collateral matters.* Thus, although the return of an officer, since deceased, was held admissible to show that an arrest was made and also its date, yet such certificate was deemed no evidence of the particular spot where the arrest was made as it was no part of the officer's duty to state such fact."

That such is the accepted rule of decision in this state is beyond question, for it appears in Mann v. Best, 62 Mo. 490, that a mere *private entry* made by a sheriff, afterward deceased, about a matter which the statute did not require a record, was received in evidence in aid of a title because it pertained to the *res gestae* with respect to proceedings from which the title flowed. Besides showing in that instance that the private entry of the sheriff so made was in his handwriting, it is true a witness testified it was made in his presence, but that fact, though it attested the genuineness of the sheriff's private entry, added naught to the competency of the memorandum as evidence. It is to be observed of that case that the private entry there received in evidence was made by a party other than one to the pleading litiga-

tion; but the memorandum was considered in evidence and the judgment affirmed under the well-recognized exception to the rule against hearsay. In Pool v. Dicus, 1 Bing. N. C. 654, an entry of the dishonor of a bill of exchange made by the clerk of a notary on the margin of a book in the usual course of business at the time of dishonor was declared to be competent evidence as of the *res gestae* on showing the death of the clerk and the fact of his handwriting. In Champneys v. Peck, 1 Stark. 404, a bill bearing an indorsement, "March 4, 1815, delivered a copy to C. D." was admitted in evidence as of the *res gestae* in proof of the fact of delivery, upon its being shown that the indorsement itself was in the handwriting of a clerk who was since deceased and that in the usual and customary course of business it was his duty to deliver copies of such notices to the party suggested. To the same effect is Doe v. Turford, 3 B. & Ad. 898. In cases circumstanced as this one, such evidence is received under a recognized exception to the rule against hearsay on the grounds of necessity and as of the *res gestae*, in the interests of natural justice. Indeed, the beneficial scope of the principle extends to a case where the party who made the entry is insane or detained by serious illness and probably to one where the witness is absent from the jurisdiction and therefore unavailable as well as to a deceased person, for it predicates on the impossibility of obtaining the testimony of the witness. That such is the accepted rule of decision is attested by Prof. Greenleaf in his work on Evidence, where the subject is much elucidated. [See Greenleaf on Evidence (16 Ed.), sec. 120a, et seq.] But it is argued there must be some showing that the party making such memorandum had knowledge of the facts therein disclosed. The proposition is entirely true. In this case, there is an abundance in the facts and circumstances to disclose knowledge on the part of Easley as to the amount and character of lumber stated in the invoice. It appears from defendant's witnesses that Easley stated to them

he had loaded the car of lumber and from plaintiffs' that he drew a draft on them of that date for a considerable percentage of its value as was his custom. Ordinarily men conducting an important business, as it appears Easley did, do not make such statements and draw drafts on regular customers for consignments not existent. Easley was a dealer in, and a shipper of, lumber in that section and had been for a number of years and the evidence is quite conclusive that he had knowledge of the facts as to both the character and quantity of the lumber in the car. That the invoice in Easley's handwriting made contemporaneously with the consignment in the usual course of business according to his custom and immediately transmitted through the United States Mail to plaintiff annexed to the bill of lading is competent evidence of the character and quantity of the lumber in the circumstances of the case as of the *res gestae* is entirely clear.

In order to curtail an undue extension of the opinion, it may be said when all of the evidence is considered, interest calculated and the freight at $6.50 per 1000 feet of lumber deducted, the judgment does not seem to be excessive and the point made that it is should be overruled. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.