Edwina MITCHELL, J. O. Mitchell and E. C. Wright, Plaintiffs-Appellants,

v.

ST. LOUIS ARGUS PUBLISHING COMPANY, a Corporation, and Nanny Turner, Frank Mitchell, Sr. and David M. Grant, Defendants-Respondents.

No. 33438.

St. Louis Court of Appeals, Missouri.

Sept. 22, 1970.

Rehearing Denied Oct. 19, 1970.

Victor Packman, Clayton, for plaintiffs-appellants.

David M. Grant, Joseph S. McDuffie, St. Louis, for defendants-respondents.

SMITH, Commissioner.

This matter reaches us on appeal from a judgment entered in a court tried case dismissing plaintiffs' cause of action. Plaintiffs sought certain equitable relief which generally described would have placed them in control of the St. Louis Argus Publishing Company (hereinafter Argus) and ousted the individual defendants from control. Plaintiffs' right to the relief sought depends on resolution of the ownership of ten shares of stock of the Argus, all of which is claimed by defendant Frank Mitchell, Sr. and 6⅔ shares of which is claimed by plaintiff Edwina Mitchell. The controversy over control of the Argus has led the parties, directly or indirectly, before the Supeme Court of this state on at least two prior occasions. See Turner v. Mitchell, Mo., 297 S.W.2d 458, and Land Clearance for Redevelopment Authority of City of St. Louis v. Zitko, Mo., 386 S.W.2d 69.

On May 16, 1966, the Argus had 774 shares of common stock outstanding. Excluding those in dispute, plaintiffs owned 384 shares, the individual defendants owned 380. Plaintiffs at that time made no claim to ownership of the remaining 10 shares but contended that they were not owned by Frank Mitchell, Sr. This con-tention was overruled by defendant Turner, chairman of the meeting, and Frank Mitchell, Sr. was permitted to vote the shares. It is unnecessary to set forth at length the matters which came before the meeting or the results of votes, for, as above seen, the outcome of the stockholder division is, and presumably will continue to be, determined by the ownership of the 10 shares in question.

These shares were originally issued to S. S. Reed in 1920, and remained his property until his death in January 1955, in Wayne County, Michigan. In due course. his widow, Annie May Reed, was appointed administratrix of his estate by the Probate Court of Wayne County. Her inventory of the estate listed these 10 shares as an asset of the estate, and her application for letters listed herself and her two children, Mary Armstead and Samuel S. Reed, Jr., as the only heirs at law. On March 27, 1956, Mrs. Reed filed her final accounting and request for distribution to the heirs at law. This accounting showed she held the 10 shares for distribution. Attached to the final account were consents to its allowance executed by the two children.

By documents dated September 27, 1956, each of the heirs (including Mrs. Reed) acknowledged receipt of 3⅓ shares of the stock of Argus and $7,258.60 "in full and complete satisfaction of my entire interest in the residue of the personal estate of [the] deceased." The receipt filed by Annie May Reed as an heir contained the additional notation signed by the probate judge: "Filed this 12th day of October A. D. 1966 AND IT IS HEREBY ORDERED That Annie May Reed, administratrix of said estate, be and she is hereby discharged, her bond released and said estate closed."

By separate assignments dated December, 1956, each of the two adult children "For Value Received" sold, assigned and transferred to their mother their "interest in Twenty (20) Shares of the Capital Stock of the St. Louis Argus Publishing

Company, formerly owned by his (her) father, Samuel S. Reed, deceased, standing in his (her) name on the books of said St. Louis Argus Publishing Co. represented by Certificate No. 27 * * *" Each of the children's signatures was guaranteed by a banking institution. No stock certificates were ever issued by the Argus to either of the children or the mother. On January 27, 1957, the Probate Court entered its order that the residue of the estate be assigned in equal shares to the widow and two children.

In 1959, Frank Mitchell, Sr. (apparently influenced by the main characteristic of the paper's namesake) paid Mrs. Reed $1500 "in full payment for 10 shares stock of St. Louis Argus Publishing Co. issued to Reve. S. S. Reed." In return he received certificate number 27 of the St. Louis Argus Publishing Company reflecting ownership of 10 shares of the stock in S. S. Reed. The assignment and transfer section on the back of the certificate is signed "Annie M. Reed, Widow of S. S. Reed." Thereafter, certificate number 21 of Argus was issued to Frank W. Mitchell, Sr. reflecting his ownership of 10 shares of Argus stock.

In January 1966, Edwina Mitchell received from the Argus a certificate for 370 shares representing her life estate interest in stock held in trust pursuant to the trust instrument discussed at length in Turner v. Mitchell, *supra*. That trust had terminated by its terms in January 1966, and Edwina Mitchell at that time, for the first time, achieved the absolute right to vote the stock. Following the May 16, 1966 meeting, at which time or shortly prior thereto Mrs. Mitchell says she first became aware of the Reed-Mitchell transaction, Mrs. Mitchell or her representative contacted the two Reed children. She paid each of them $500 and received from each an assignment of all their "right, title and interest as an heir and distributee of the Estate of Samuel S. Reed, deceased * * * in and to ten shares of stock of the [Argus] * * * said ten shares being evidenced by

Certificate No. 27 issued in the name of S. S. Reed." The assignments also carried representations concerning the children's heirship and the probate of the father's estate, and warranties that each child had "not sold nor assigned his (her) undivided interest in and to said shares of stock to anyone * * *" Certain other facts will be noted later as they become pertinent.

Plaintiffs, in the trial court and here, do not question the ownership by defendant Mitchell of 3⅓ of the shares in dispute, those which belonged by intestate succession to Annie May Reed. The thrust of their position is that Mr. Mitchell received no valid title to the remaining 6⅔ shares because they were never validly conveyed to Mrs. Reed.

The trial court prepared and filed a memorandum opinion in support of the judgment rendered, containing its findings on disputed issues of fact, and specifically passing on the credibility of the main witness, Mr. Leib. Plaintiffs' points on appeal are directed to particular statements of the court in the memorandum opinion. While we are not bound by the trial court's findings and have the duty and authority to consider the evidence and make our own findings, we will not set aside the judgment unless clearly erroneous and will defer to the trial court's specific findings here of credibility. Turner v. Mitchell, *supra*.

The main question presented to us is whether the assignments from the children to Annie Reed validly transferred the children's interest to her. If they did, then the children had no interest to convey to Mrs. Mitchell in 1966. Plaintiffs' attack on these assignments presents several theories. Initially, it is contended that the assignments lack validity because at the time they were made, no order had been entered by the Probate Court directing distribution to the heirs and title to the stock was still in the administratrix. It is quite true, as plaintiffs contend, that under Michigan law legal title to the personal

property of a decedent is vested in the personal representative and not in the heirs. Michigan Trust Co. v. City of Grand Rapids, 262 Mich. 547, 247 N.W. 744. The question here presented is whether that legal title can be transferred, under Michigan law, prior to the court's order of distribution of the estate. Under the facts here, the answer is yes. At the time the assignments were made all debts of the estate had been paid, a final account had been rendered, and receipts for distribution had been received from the children by the administratrix. The Michigan Supreme Court has held that where the debts properly filed have been paid, the final account of the administrator has been rendered and distribution to the heirs has been made prior to entry of an order directing such distribution, that distribution is valid, permissible and transfers legal title to the personal property to the heirs. Brown v. Forsche, 43 Mich. 492, 5 N.W. 1011.

■ Here the only three heirs to the estate of S. S. Reed agreed to and accepted, before the assignments, their respective shares in the estate. None of the three is attacking that distribution nor raising any question about the handling of the probate estate. Upon the distribution of the assets of the estate to the respective heirs those assets became the property of the heirs and could be transferred or assigned by them. Because no actual division of the stock between the three heirs occurred does not preclude the right of the heirs to assign it between themselves. Voluntary family agreements as to distribution of a decedent's estate are valid and enforceable in Michigan. See Brown v. Forsche, supra. It is apparent that the heirs here agreed that Mrs. Reed was to receive the Argus stock, which agreement was effectuated by acknowledgment of receipt and assignment shortly thereafter.

Plaintiffs also contend that the assignments were without legal consequence because not in accord with Section 403.050 of the Uniform Stock Transfer Act in effect in Missouri in 1956, or Section 400.8–309 of the Uniform Commercial Code in effect in Michigan, California and Massachusetts (the latter two where the assignments were executed) in 1956.

■ There was only one certificate in existence relating to these ten shares of stock at the time the assignments were made. That certificate was in the possession of the widow. The children executed assignments of any interest which they might have in that certificate to the person having possession of that certificate. The delivery of the assignments, properly executed, was sufficient to effect a transfer of the interest of the children to their mother. It was unnecessary for them to go through the routine of shipping the certificate back and forth to effectuate a valid transfer of the children's interest in the stock, as between the children and the mother. See Humble Oil & Refining Co. v. Blankenburg et al., 149 Tex. 498, 235 S. W.2d 891; Gosney v. Costigan, 326 Mo. 1215, 33 S.W.2d 947 [6].

■ No direct challenge is made to the transfer from Mrs. Reed to Frank Mitchell, Sr., and in fact plaintiffs concede that Mr. Mitchell acquired the interest of Mrs. Reed, claiming, however, that such interest was only 3⅓ shares. We hold that Mrs. Reed acquired all interest in the 10 shares from the assignments by the children to her. We find no merit to plaintiffs' contention that since the assignments were without consideration they are not enforceable in equity. In the first place, the gift (if such it was) was completed and the title to the property vested in Mrs. Reed when the assignments were delivered to her. Smith v. Smith, Mo.App., 313 S.W.2d 753. Additionally, no attempt is here made to enforce an agreement to transfer by any party to the agreement. Neither of the children challenges the assignments or attempts to question that a gift was made and delivery completed. Both children delivered an assignment to the mother which fully conveyed all interest which they had to the shares of stock in question, and nei-

ther child has questioned or attempted to set aside that assignment. The record fully supports the trial court's finding that Mrs. Reed acquired complete title to the 10 shares of stock in 1956 and validly transferred her interest to Frank Mitchell in 1959.

■ Nor does the failure of the widow and children to obtain certificates in their names for their respective interests in the 10 shares vitiate the title acquired by Mr. Mitchell. At the time he purchased the stock from Mrs. Reed he received the certificate endorsed by her as the widow. At that time she held full title to the stock by intestate succession and by virtue of the assignments of the only other heirs of all their interest in the stock. No third party rights had come into existence before Mr. Mitchell's purchase nor did the corporation refuse to honor the endorsement of Mrs. Reed when it issued certificate number 21. It may be that better procedure would have called for issuance of a certificate in her name and assignment of that certificate to Mr. Mitchell. But, where as here, she was in fact the owner of all shares, no third party rights had intervened, and Mr. Mitchell's purchase was in good faith for valuable consideration, we cannot hold that failure to utilize the technical procedures available destroys the ownership which he acquired. And plaintiffs do not really contend it does, for they have consistently acknowledged his ownership of the 3⅓ shares acquired by Mrs. Reed by intestate succession. In essence, this litigation turns upon the validity, not of Mrs. Reed's sale to Mr. Mitchell, but of the validity of the assignments by the children to Mrs. Reed. We find those assignments to be valid transfers of the interest of the children to Mrs. Reed.

■ Plaintiffs further attack the trial court's refusal to accept as probative evidence the warranties and representations contained in the assignments from the children to Mrs. Mitchell. The court's refusal was based on hearsay and was clearly cor-

rect. The making of the warranties and representations might, of course, go to the good faith of Mrs. Mitchell in purchasing the stock, but plaintiffs do not, and did not, seek to use the warranties and representations for that purpose. Instead they base their theory that Mrs. Reed had no valid title to the stocks upon the truth of the statements contained in the assignments to Mrs. Mitchell from the children, without any testimony from those children and in the face of the preexisting assignments. To permit this key fact in this litigation to be established by the written statements of persons who did not testify and were not subject to cross-examination is the grossest violation of the rule against hearsay and the court properly declined to give the statements any probative weight.

■ Nor are the warranties and representations admissible under the Business Records Act (See Sec. 490.680 RSMo1959, V.A.M.S.) as urged by plaintiffs for there was no foundation which would qualify these statements under that act. Simply because a statement is in writing and part of a financial transaction, it does not automatically qualify as a business record. The reason the business record exception to the hearsay rule is recognized is the presumptive verity of routine recording of business activities done on a regular basis at times close to the transaction recorded. Kitchen v. Wilson, Mo., 335 S.W.2d 38[6]. To qualify for admission the foundation which warrants the presumption of verity must be laid. No attempt to lay such foundation was made here.

■ Plaintiffs contend the warranties are part of the res gestae of the business transaction between the children and Mrs. Mitchell. The cases cited in support of this contention deal with business entries made in the regular course of business at a time prior to the adoption of § 490.680. Milne v. Chicago, R. I. & P. R. Co., 155 Mo.App. 465, 135 S.W. 85. The same foundation was required under those cases as under the business records acts pre-

viously discussed. Additionally, the assignments were not prepared by the children but by plaintiff or her representative for signature by the children. They can hardly be classed as spontaneous voluntary statements made as part of a transaction. Nor is this case ruled by those cases cited by plaintiffs where warranties and representations are held binding and unchallengeable by the party making them in litigation between the parties to the agreement. The children of Mrs. Reed are not parties to this litigation and defendants are in no respect bound by their written statements of ownership.

Plaintiffs' remaining allegations of error are essentially attacks upon the reliability of defendants' evidence. We agree with the trial court that the handling of the probate estate of S. S. Reed was not in all respects perfect. The receipts of the children and mother acknowledging their receipt of the residue were not filed at their time of execution and apparently were forgotten about for ten years when defendants' concern about the stock situation unearthed them from the file and caused them to be filed in court. But there was no basis for concluding that the failure to file was anything other than an oversight or that the receipts were in anyway inaccurate, fraudulently drawn or were not signed by the heirs at the time indicated in the receipts. The testimony of the attorney who handled the probate of the estate, Mr. Leib, was indefinite in some respects, but considering he was testifying mainly to matters which occurred ten years before the trial, we cannot conclude, as plaintiffs do, that his testimony lacked credibility or was so inconsistent as to be valueless. The trial court specifically accepted his testimony as true and found the witness to be credible. We defer to that finding, particularly where the record supports it. We also accept that witness' testimony that the reference to "20 shares" of stock in the assignments from the children instead of 10 shares was a mechanical error. It is clear that the intention of the widow and the children was to transfer to the widow all interest which the children had in certificate number 27, and the error in describing the number of shares that certificate covered does not vitiate that intention or the documents executed to bring the intention to fruition.

Plaintiffs also attack the conduct of defendants' attorney in the preparation of the case. Part of this attack stems from the attorney's failure to voluntarily disclose the existence of the assignments from the children until that stage of the preparation when they would be of maximum benefit to defendants. No discovery device was utilized by plaintiffs to obtain these documents or to find out if they existed. The discovery provisions of the Rules of Civil Procedure have reduced substantially the "sporting" nature of litigation, but we have not yet arrived at the point where error can be premised upon an attorney's failure to voluntarily disgorge evidence helpful to his case.

The other attack arises as the result of an abortive attempt to take the depositions of the two Reed children in Indiana. Plaintiffs arranged for such depositions but did not issue subpoenas for witnesses or seek any other measure to assure attendance. The daughter contacted Mr. Leib, the Detroit family lawyer, who had handled the probate, and was advised by him that unless she had been served with some compulsive order she was under no legal obligation to show up for the deposition. Neither she nor her brother did show up. Plaintiffs complain about this occurrence because Mr. Leib appeared as a witness for defendants and had conferred with defendants' counsel, Mr. David Grant, on several occasions and had had some correspondence with Mr. Grant. The record fails to establish that defendants or their counsel in any way attempted to interfere with the presence of the witnesses at the deposition, and in fact defendants' attorney made the trip to Indiana for the depositions. There are methods for com-

pelling the attendance of witnesses at depositions taken in other states. Plaintiffs did not see fit to utilize these methods. If litigants and their counsel choose to rely upon the promises of witnesses to appear rather than to insure appearance by compulsive process, they cannot complain on appeal if their reliance leads them on a wild goose chase.

██ Nor can we find any wrongdoing in defendants' counsel consulting with Mr. Leib prior to the trial, and discussing Mr. Leib's probable testimony before trial. It would be strange indeed for a lawyer to put a witness on the stand without having any idea of what he would testify to. The record demonstrates that Mr. Grant's actions throughout the preparation and trial of this case were those of the conscientious advocate trying to fully protect his clients' rights within the framework of the procedural rules and the law.

Our independent evaluation of the evidence in this case convinces us that the Reed children validly and completely transferred their interest in the stock in question to their mother in December 1956. She, at that time, acquired full and complete title to the stock and had the power to sell and assign her interest to Frank Mitchell, Sr. in 1959. She did so sell, for valuable consideration, and her endorsement and delivery of the stock certificate conveyed her interest to Frank Mitchell, Sr. He, at that time, became the owner of the stock in question. Mrs. Mitchell's attempted purchase from the Reed children in 1966 could vest no interest in her, for the children at that time had no interest to convey. Plaintiffs' claims that the "equities" require judgment in their favor miss the mark. We are not dealing with a question of "equities" here, but simply with which of two third parties first acquired legal title to the 10 shares of stock. That question, once again, reduces itself to a determination of whether Mrs. Reed acquired title from her children. We are not confronted with concealed ownership by Mr.

Mitchell, fraud, misleading of Mrs. Mitchell, or any other evidence or contention which would require a court to apply equitable principles to protect Mrs. Mitchell. Simply stated, she gambled her money that the legal title claimed by Mr. Mitchell, and which she knew he claimed, was in some respect deficient. Equity does not provide relief because snake-eyes appear. The court properly found that plaintiffs. had failed to establish any claim for relief and the judgment is affirmed. Respondents' motion to dismiss the appeal on procedural grounds, taken with the case, is denied.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, respondents' motion to dismiss the appeal is denied and the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.