Dean A. DAVIDSON and Denzil D. Davidson, Appellants,

v.

Tom FRAKES and Vesta Frakes, Respondents.

No. WD 32715.

Missouri Court of Appeals, Western District.

July 27, 1982.

Rehearing Denied Aug. 31, 1982.

Dean A. Davidson, St. Joseph, for appellants.

Stanley I. Dale and Candace J. Barnes, St. Joseph, for respondents.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

The present case turns upon the issue whether defendant Frakes was the tenant of a certain 160-acre farm owned by plaintiffs, Dean Davidson and Denzil Davidson, or whether he was a sharecropper. If he was a tenant, his tenancy, being for agricultural purposes, was a year-to-year tenancy and he was entitled to 60 days' written notice of intention to terminate. Sec. 441.-050, RSMo 1978. According to the trial court's findings, hereafter discussed, such 60-day notice was not given by the landowner.

■ Plaintiffs contend, however, that Mr. Frakes was a sharecropper, not a tenant, and that he had no right to possession. A sharecropper has the right only to go upon the land for the purpose of planting, cultivating and harvesting the crops. He has no possessory interest and may not exclude the owner from possession. A sharecropper is not entitled to any statutory notice of intention to terminate the sharecropping arrangement. *Busby v. Stimpson*, 542 S.W.2d 551, 553 (Mo.App.1976).

The trial court found that Mr. Frakes was a year-to-year tenant and that the year ended March 1, 1981. On the Davidsons' failure to serve him a written notice of termination 60 days prior thereto, the defendant was entitled to hold possession for an additional year, that is, till March 1, 1982. The trial court therefore rendered judgment for defendants Frakes on plaintiffs' unlawful detainer claim, § 534.030, RSMo 1978, and enjoined plaintiffs from interfering with their possession.

■ It is our opinion that there was no evidence to support the trial court's decision. The evidence shows instead that Mr. Frakes was a sharecropper. The judgment must be reversed.

The facts are not in dispute. Mr. Frakes' own testimony agrees with the plaintiffs' testimony and establishes plaintiffs' entitlement to the possession of the property. That being the case, we cannot affirm the trial court's judgment on the ground that the trial court was entitled to reject the testimony of the plaintiffs' witnesses. *See In re Marriage of Baker*, 584 S.W.2d 449, 450 (Mo.App.1979); *Brunswick Corp. v. Briscoe*, 523 S.W.2d 115, 119 (Mo.App.1975); *Milne v. Chicago, R. I. & P. Ry. Co.*, 155 Mo.App. 465, 135 S.W. 85, 86–87 (1911).

The farm was owned by Ray Mallory till his death in June, 1979. It was managed then by the executors of his estate—chiefly, it appears, by Bob Mallory, son of the decedent—until it was sold to the plaintiffs Davidson on December 18, 1980. After plaintiffs received title, and on January 2, 1981, they learned that Mr. Frakes was claiming rights as a tenant. On January 29, 1981, they served notice on the Frakeses demanding immediate possession, but stating that any tenancy they might prove to have would terminate "at midnight on February 28, 1981, or as soon thereafter as such tenancy may be terminated".

Until Mr. Mallory's death, he and his wife had resided on the farm in a mobile home. After his death, his widow moved out of the mobile home. The co-executors of the estate—who were Mr. Mallory's sons, Bob and Steven Mallory—sold it to Mr. Frakes in October of 1979. Mr. Frakes moved into the mobile home with his wife and children. They were still residing there at the time of the trial of this case. Mr. Frakes in describing the arrangement under which the mobile home was left on the land, said: "Well, as far as living on the property, when I made a deal for the trailer house, I asked Bob Mallory, I said, 'As long as I'm farming any ground down here, could I live here?' And he said yes."

Mr. Frakes further described the development of the arrangement under which he farmed the land. The arrangement commenced in the fall of 1966. At that time Mr. Frakes and his father had sown wheat on a part of the property under an agreement with Ray Mallory. He, by himself or with his father, had farmed part or all of the land from and after that time up to the time of trial, except in 1969 and part of 1970. In 1969 and part of 1970, when Mr. Frakes was in the Navy, his father had farmed it. At least up to that time, and the record does not show how long afterwards, Mr. Frakes and his father had farmed "in partnerships". By 1979, at least, Mr. Frakes' father was no longer associated with him in farming the Mallory land.

How much of the land Mr. Frakes farmed before 1979 is not clear, but in that year he farmed the corn, the beans, the tobacco and the wheat. The tobacco had been added in 1976 or 1977, which before then had been planted by a Mr. Matthews. In 1980 the hay land was added. A Mr. Nichols had harvested the hay in 1979 and earlier.

The arrangement between Mr. Frakes and the successive owners of the land had remained basically the same as to the division of the crops and as to the division of expenses of production.

He described the crop and expense sharing arrangement as follows:

Q. And with whom did you make arrangements to farm the property after (Ray Mallory's) death?

A. Well, we just continued on with the—Bob Mallory and his brother also was a co-executor.

Q. What were those arrangements?

A. The same as they was when I farmed it before. Half of the corn and beans, the wheat. They furnished half the expenses and I furnished half, of chemicals and so forth. And the tobacco, I furnished all the fertilizer and labor and materials for the beds and got two-thirds. And they furnished the sticks and the stripping room and electricity and they got a third. They was also supposed to furnish a stove for that too, in the stripping room.

There is in the arrangement described above, as shown by the conduct of the parties or by any other means, none of the indicia of a tenancy. There was no contract, either oral or written, which used such words as rent or lease or demise. *See Johnson v. Hoffman,* 53 Mo. 504, 505 (1873); *Busby v. Stimpson,* 542 S.W.2d at 553; *Jackson v. Knippel,* 246 S.W. 1007, 1008 (Mo.App.1923). There is no indication (before the dispute arose between the parties) that Mr. Frakes ever claimed or asserted any right to the possession of the land, to the exclusion of the respective owners. *Smith v. McNew,* 381 S.W.2d 369, 373–374 (Mo.App.1964); *Pearson v. Lafferty,* 197 Mo.App. 123, 193 S.W. 40, 41 (1917); *Jackson v. Knippel,* 246 S.W. at 1008. The only right he claimed or exercised was the right to plant, cultivate and harvest the crops. In fact, when he purchased the mobile home from Ray Mallory's estate in October, 1979, he asked Bob Mallory, the executor, "As long as I'm farming any ground down here, could I live here?" This is indicative of a mutual recognition of Mallory's possession. Also, the "stripping room" for tobacco was furnished by the landlord, according to Mr. Frake's testimony, an indication of the possession by the landlord of the stripping room. Even after the dispute arose between the Davidsons and Mr. Frakes, Mr. Frakes never asserted any claim to the pastureland which was too rough to get farm equipment over. How much land was included in that description the record does not show.

Absent was any obligation on Mr. Frakes to repair or maintain the property. *See Johnson v. Hoffman,* 53 Mo. at 506; *Busby v. Stimpson,* 542 S.W.2d at 553; *Jackson v. Knippel,* 246 S.W. at 1008. The only evidence of repairs or maintenance was of those made by Ray Mallory during his lifetime, and those made by the Davidsons after their purchase of the farm in December, 1980. Absent also was any right of Mr. Frakes to reside on the property, except the gratuitous license described above. *See*

*Pearson v. Lafferty,* 193 S.W. at 41; *Busby v. Stimpson,* 542 S.W.2d at 554; *Smith v. McNew,* 381 S.W.2d at 374.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiffs against Mr. Frakes upon their unlawful detainer complaint and upon defendants' counterclaim for injunction and for damages. The court upon a new hearing will ascertain the amount of damages to which plaintiffs may be entitled under their unlawful detainer complaint.

Plaintiffs request also that their damages from the injunction may be determined on remand. However, they cite us to no statute or authority, nor do they explain to us the reasons they are entitled to this relief. *See State ex rel. County of Shannon v. Chilton,* 626 S.W.2d 426, 430 (Mo.App. 1981); *Seaton v. Western Auto Supply Co.,* 609 S.W.2d 207, 210 (Mo.App.1980). This requested relief is denied.

There is no evidence in the record which would support any judgment against Vesta Frakes. As to her, the judgment on the claim for unlawful detainer is affirmed.

All concur.