Orin YOUNG and Margaret Young, hus-
band and wife, Appellants (Defendants
and Third–Party Plaintiffs),

v.

Robert THOMAS and Lorraine Thomas,
husband and wife, Appellees
(Plaintiffs),

and

Thomas R. Thomas, Appellee
(Third–Party Defendant).

No. 89–158.

Supreme Court of Wyoming.

Jan. 8, 1990.

H.W. Rasmussen and Clay B. Jenkins of
Badley & Rasmussen, P.C., Sheridan, for
appellants.

Bruce A. Hellbaum of Jones, Jones,
Vines & Hunkins, Wheatland, for appel-
lees.

Before THOMAS, URBIGKIT, MACY
and GOLDEN, JJ., and BROWN, J.
Retired.

BROWN, Justice, Retired.

This dispute involves a sharecrop ar-
rangement. Appellees cultivated and har-
vested crops on appellants' land. The par-
ties to this action disagreed on the amount,
if any, appellees should receive for their
work. The trial court awarded judgment
to appellees and this appeal followed.

Appellants state that the issue before
this court is:

Does the statute of frauds bar an oral
contract for sale of more than $27,975.87
of wheat?

Appellees state the issue differently:

Was there a contract for the sale of
goods between these parties which would
fall under the purview of the statute of
frauds embodied in Wyoming Statute
§ 34–21–208?

On May 13, 1986, Orin Young and Tom
Thomas, son of Robert and Lorraine Thom-
as, entered into a written cash lease agree-
ment whereby Tom Thomas was to receive
the growing crops and in turn pay to Orin
Young a total of $75,000 consideration for
the lease.

Apparently the parties here initially pro-
ceeded under a written lease. For reasons
that are not entirely clear, the parties aban-
doned or vacated the written lease of May
13, 1986. In any event, Orin Young, Rob-
ert Thomas and others met at an eatery in
Lusk, Wyoming, on or about July 20, 1986,
and entered into an oral crop share ar-
rangement with respect to the 1986 crop.
The terms of the new arrangement were
that the Thomases would harvest the
wheat crop and the proceeds from the sale
of wheat would be divided equally.[1]

---

1. Thomas R. (Tom) Thomas was not originally a    party to the action filed in the district court.

The Thomases incurred the expenses and labor for growing and caring for the 1986 crop. The Thomases and Youngs did, in fact, harvest the crop growing on the Prairie Center Farm, which harvest was completed in the latter part of August. The entire crop was eventually sold to third parties in the name of Orin Young. The sales generated cash proceeds in the amount of $55,951.74, and the proceeds were deposited at the Lusk State Bank in the name of Orin Young. The Youngs paid Robert and Lorraine Thomas $17,000 from the sale of the wheat crop harvested in the summer of 1986. The parties disagreed as to the division that was to be made of the proceeds from the 1986 crop, and as to the allocation of expenses.

Before the disagreement concerning the proceeds from the 1986 crop, the parties entered into another oral lease in September of 1986, the exact terms of which are in dispute, but which did include planting of the 1987 crop. The Thomases did in fact till the ground, and plant, fertilize and spray the crop on the Prairie Center Farm to be harvested in 1987.

The court found the reasonable expenses for tilling and planting 700 acres of wheat to be:

| | |
|---|---|
| Seed | $ 4,925.00 |
| Fuel | 1,262.72 |
| Tillage @ $3/acre | 2,100.00 |
| Planting @ $6/acre | 4,200.00 |
| Fertilizer | 5,124.62 |
| Application | 2,100.00 |
| TOTAL | 19,712.34 |

In the spring of 1987, Orin and Margaret Young bid the Prairie Center Farm into the United States Department of Agriculture's Conservation Reserve Program. In order to comply with the requirements of the program, the Youngs had to destroy all vegetation growing on the Prairie Center Farm, including the crop planted by the Thomases. The Youngs did not allow the

He was brought into the lawsuit by a third-party complaint filed by appellants. In this third-party complaint, the Youngs ask for judgment based on the May 13, 1986 agreement. There is no indication, however, that the court specifically decided anything with respect to appellants' third-party complaint.

Thomases to participate in the program as lessees.

At trial, the court held that the Thomases were entitled to the $17,000 they had already received plus an additional $7,500 for harvesting the 1986 wheat crop. The court also held that the Thomases were entitled to $19,712.34, being the reasonable value for planting the crop to be harvested in 1987. A total Judgment in the sum of $27,212.34 was awarded appellees.

Appellants deny that any crop share arrangement was made with appellees. Appellants, however, do not deny that appellees harvested the 1986 wheat crop and planted the 1987 crop. Likewise, appellants do not question the dollar figures the court used in determining its judgment. Rather, appellants contended at trial and on appeal that the statute of frauds barred appellees' claim. They also contended that the written agreement dated May 13, 1986, between Orin Young and Tom Thomas was viable and that the case should be remanded to determine the respective rights of the parties under the May 13, 1986, written agreement.[2]

Appellants argue that appellees' claim regarding the sharecrop arrangement is barred by the statute of frauds set out in W.S. 34–21–208(a), which provides in pertinent part that "*[A] contract for the sale of goods* for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made *between the parties.*" (Emphasis added.) However, there was no sale of goods (grain) between the Thomases and Youngs. Appellants admit that all the wheat was sold to third parties and proceeds from the several sales were deposited into Orin Young's bank account.

2. Appellees Robert Thomas and Lorraine Thomas were not parties to the written agreement dated May 13, 1986.

In their brief, appellants define and discuss a sharecrop agreement and then make an illogical conclusion that the parties' sharecrop arrangement constituted a sale of goods between the parties. W.S. 34–21–206 states that "[a] 'sale' consists in the passing of title from the seller to the buyer for a price." The parties' transaction here did not constitute a sale under the statutory definition. The title to the grain never passed from the Youngs to the Thomases or visa versa. Title passed from the Youngs to the elevators.

An agreement to divide money or proceeds, as in this case, does not fall within the scope of the Uniform Commercial Code. W.S. 34–21–205(a) defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale *other than the money in which the price is to be paid.*" (Emphasis added.)

In *In re: Midas Coin Company, Inc.,* 264 F.Supp. 193 (D.C.Mo.1967), the court stated that money, when used as a medium of exchange, is excluded from the definition of "goods." In the agreement to divide the proceeds of the crop between the Thomases and the Youngs, there was no sale of wheat, only an agreement as to how money would be used as a medium of exchange to accomplish the parties' intentions of having the Thomases farm the Youngs' land.

A sharecrop agreement, as in this case, does not constitute a contract for the sale of goods under W.S. 34–21–208. According to appellants' definition of a sharecrop agreement, such agreement is similar to a lease in which the lease payment is accomplished by dividing the proceeds of the sold crop. According to the cases of *Busby v. Stimpson,* 542 S.W.2d 551 (Mo.App.1976) and *Davidson v. Frakes,* 639 S.W.2d 164 (Mo.App.1982) cited by appellants, the sharecropper's right to the land is to go upon it for the purposes of planting, cultivating and harvesting. This is what the Thomases did. The court in *M & W Farm Service Company v. Callison,* 285 N.W.2d 271 (Ia.

1979), held that the Uniform Commercial Code applies only to a contract for the sale of goods which involves the passing of title.[3] It appears, therefore, that a true lease agreement would be exempt from the U.C.C. statute of frauds.

We affirm the trial court in all respects.

---

**3.** *M & W Farm Service Company* was not followed in *Triangle Marketing, Inc. v. Action Industries, Inc.,* 630 F.Supp. 1578 (N.D.Ill.1986) on a point not applicable here.